UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, CHIEF JUDGE

```
--------------------------------------------------------------------------X
                                                        )
FAR EAST AMERICAN, INC., AND                            )
LIBERTY WOODS INTERNATIONAL, INC.,                      )
                                                        )
                         Plaintiffs,                    )
                                                        )
                  and                                   )    Consol. Ct. No. 22-00213
                                                        )
                                                        )
AMERICAN PACIFIC PLYWOOD, INC., and                     )
INTERGLOBAL FOREST, LLC.,                               )
                                                        )
                         Consolidated Plaintiffs,       )
                                                        )
            v.                                           )
                                                        )
UNITED STATES,                                          )
                                                        )
                         Defendant.                     )
--------------------------------------------------------------------------X
```

### ORDER

Upon consideration of Consolidated Plaintiff American Pacific Plywood, Inc.'s ("APPI") Rule 56.2 Motion for Judgment Upon the Agency Record, its Memorandum in Support Thereof, and all other relevant papers, it is hereby:

**ORDERED** that Consolidated Plaintiff APPI's Motion is granted and judgment is entered for Plaintiffs and Consolidated Plaintiffs, and it is further

**ORDERED** that the determinations made by the U.S. Customs and Border Protection ("CBP") in Enforce and Protect Act ("EAPA") Consolidated Case No. 7252 finding evasion are unsupported by substantial evidence, are arbitrary and capricious, constituted an abuse of discretion and otherwise are not in accordance with law; and it is further

**ORDERED** that CBP denied due process protections owed to Consolidated Plaintiff APPI, the Plaintiffs and Consolidated Plaintiffs; and it is further

**ORDERED** that CBP's determinations are hereby remanded to CBP for reconsideration in accordance with the Court's judgment and opinion in this matter.

**SO ORDERED.**


Dated: _____, 2023               _____
      New York, New York                         Mark A. Barnett, Chief Judge

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, CHIEF JUDGE
--------------------------------------------------------------------------X
                                                                )
FAR EAST AMERICAN, INC., AND                                    )
LIBERTY WOODS INTERNATIONAL, INC.,                              )
                                                                )
                                  Plaintiffs,                   )
                                                                )
                   and                                          )   Consol. Ct. No. 22-00213
                                                                )
                                                                )
AMERICAN PACIFIC PLYWOOD, INC., and                            )
INTERGLOBAL FOREST, LLC.,                                       )
                                                                )
                         Consolidated Plaintiffs,              )
                                                                )
           v.                                                   )
                                                                )
UNITED STATES,                                                  )
                                                                )
                                  Defendant.                    )
--------------------------------------------------------------------------X

### RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD ON BEHALF OF CONSOLIDATED PLAINTIFF AMERICAN PACIFIC PLYWOOD, INC.

Consolidated Plaintiff American Pacific Plywood, Inc., ("APPI") hereby moves

pursuant to Rule 56.2 of the United States Court of International Trade for

Judgment upon the Agency Record with respect to (1) the January 28, 2022,

determination issued under 19 U.S.C. § 1517(c) by U.S. Customs and Border

Protection's ("CBP") Trade Remedy & Law Enforcement Directorate ("TRLED"),

which found evasion under the Enforce and Protect Act ("EAPA") in EAPA

Consolidated Case Number 7252, and (2) the June 6, 2022, decision under 19 U.S.C.

§ 1517(f) issued by CBP's Office of Regulations and Ruling in *de novo* administrative

review H323923, affirming the Evasion Determination, which decision was

supplemented by OR&R on July 6, 2022 in administrative appeal number H325765.

CBP's decisions were not published in the *Federal Register*.

As set forth in the accompanying brief in support of this motion, and on the basis of the record compiled by CBP in this matter: 1) CBP's determinations are not supported by substantial evidence and were arbitrary and capricious, constituted an abuse of discretion and otherwise were not in accordance with law in finding that APPI and the other Plaintiffs and Consolidated Plaintiff entered "covered merchandise" through "false and material" statements or acts, or "material" omissions, resulting in the evasion of *Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Order*, 83 Fed. Reg. 504 (Jan. 4, 2018) and *Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan 4, 2018); and 2) CBP deprived APPI and the other Plaintiffs and Consolidated Plaintiff of due process by failing to give them notice and opportunity to comment before imposing "interim measures" under 19 U.S.C. § 1517(e) and by failing to provide them public summaries of confidential records used by CBP in making its determinations in EAPA Consolidated Case Number 7252.

Consolidated Plaintiff APPI respectfully requests that this Court grant this motion and hold (1) CBP's determinations are not supported by substantial evidence and were arbitrary and capricious, constituted an abuse of discretion and were otherwise not in accordance with law and 2) remand this case with instructions to

CBP that APPI, the Plaintiffs and the Consolidated Plaintiffs did not evade the

antidumping and countervailing duty orders on Hardwood Plywood from China.

Respectfully submitted,

/s/Frederic D. Van Arnam, Jr.

Frederic D. Van Arnam, Jr.
Ashley J. Bodden
**BARNES, RICHARDSON & COLBURN, LLP**
100 William Street, Suite 305
New York, NY 10038
Tel.: (212) 725-0200, ext. 126
Fax: (212) 889-4135
Email:  rvanarnam@barnesrichardson.com
*Counsel for American Pacific Plywood, Inc.*

Dated:  January 13, 2023
New York, NY

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. MARK A. BARNETT, CHIEF JUDGE

-------------------------------------------------------------------------X

FAR EAST AMERICAN, INC., AND )
LIBERTY WOODS INTERNATIONAL, INC., )

           Plaintiffs, )

           and )

AMERICAN PACIFIC PLYWOOD, INC., and )
INTERGLOBAL FOREST, LLC., )

           Consolidated Plaintiffs, )

           v. )

UNITED STATES, )

           Defendant. )

-------------------------------------------------------------------------X

**PUBLIC**

Consol. Ct. No. 22-00213

**Business Proprietary Information has been Deleted from Pages 4, 10, 11, 23, 24, 25, 26, 27, 28, 30, 31, 34, 35, 36, 37, 41**

## MEMORANDUM IN SUPPORT OF CONSOLIDATED PLAINTIFF AMERICAN PACIFIC PLYWOOD, INC'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

BARNES, RICHARDSON & COLBURN, LLP

Frederic D. Van Arnam, Jr.
Ashley J. Bodden
100 William Street, Suite 305
New York, NY 10038
Tel: (212) 725-0200

Attorneys for Plaintiff

January 13, 2023

TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

TABLE OF ADMINISTRATIVE RECORD CITATIONS ...................................... vi

I.      STATEMENT PURSUANT TO USCIT RULE 56.2 .................................... 1

        A.      Administrative Determination Sought to be Reviewed ....................... 1

        B.      Issues Presented and Summary of Argument ........................................ 1

II.     JURISDICTION AND STANDARD OF REVIEW .................................... 2

III.    STATEMENT OF THE FACTS ..................................................................... 4

IV.     ARGUMENT ................................................................................................. 16

        A.      Substantial Evidence on the Record Does Not
                Support a Finding of Evasion Against APPI. ................................. 18

                1.      CBP Acted Arbitrarily and Capriciously, it Abused its Discretion and
                        Otherwise Acted Not in Accordance with Law by Finding that 17 of
                        APPI's Entries Were "Covered Merchandise." ................................... 20

                2.      OR&R Cited No Evidence, Much Less
                        Substantial Evidence, that APPI Engaged in Evasion ......................... 39

                3.      This Court Should Reserve Judgment on APPI's
                        Entries of Hardwood Plywood Manufactured
                        with Chinese Two-Ply ........................................................................... 36

        B.      CBP's Determinations that APPI Entered Merchandise
                By Means of a Material and False Statement or a
                Material Omission Failed to Establish APPI's Culpability ............................. 39

        C.      APPI was Deprived Due Process and Fair Access to Information .................... 45

                1.      CBP Failed to Provide Required Public Summaries of Information ...... 46

                2.      APPI Was Denied Due Process When CBP Imposed
                        Interim Measure .................................................................................... 47

CONCLUSION ................................................................................................................. 52

i

TABLE OF AUTHORITIES

Page

<u>CASES</u>

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of
  Fed. Reserve Sys.*, 745 F.2d 677 (D.C. Cir. 1984)......................................18

*Atlantic Sugar, Ltd v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)....................29

*BP America Production Co. v. Burton,* 549 U.S. 84 (2006) .......................................22

*Burlington Truck Lines v. United States*, 371 U.S. 156, (1962)................................3

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984)      ..................................................................................3, 4

*Cleveland Bd. of Ed. V. Loudermill*, 470 U.S. 532 (1985)......................................45

*Consol. Bearings Co. v. United States*, 412 F.3d 1266 (Fed. Cir. 2005)....................3

*Consol. Edison Co. of New York v. N.L.R.B.*,305 U.S. 197 (1938) ...........................17

*Consolo v. Federal Maritime Comm'n*, 388 U.S. 607 (1966) ...................................17

*Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried & Mach.
  Workers, AFL-CIO*, 6 F.3d 1511 (Fed. Cir. 1993) ...........................................17, 33

*Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d 1324,
  1350 (CIT 2021) ..........................................................................................*passim*

*Diamond Tools Tech. LLC v. United States*, No. 20-00060, 2022 Ct. Int'l Trade
  LEXIS 146, Slip op. 22-145 (CIT Dec. 16, 2022) ...........................................40

*Diversified Products Corp. v. United States,*
  572 F. Supp. 883 (CIT 1983).......................................................................28, 29

*Fujian MacH. and Equip. Import & Export v. United States,*
  276 F. Supp. 2d 1371 (CIT 2003)......................................................................11

*Gallant Ocean (Thailand) Co., Ltd. v. U.S.*, 602 F.3d 1319,
  (Fed. Cir. 2010) ..........................................................................................17, 33

*Gerritsen v. Shirai*, 979 F.2d 1524 (Fed. Cir. 1992) ...................................................3

*Hibbs v. Winn*, 542 U.S. 88 (2004) ................................................................39

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..................................................46

*Motor Vehicle Mfrs Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .....................................................................................3, 29

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ..............46

*N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292 (1939) .......17, 36

*Nereida Trading Co. v. United States*, 683 F. Supp. 2d 1348 (CIT 2010) ...45, 48, 49

*PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751
   (Fed. Cir. 2012) .............................................................................................45

*Royal Brush Manufacturing, Inc., v. United States*, 483 F. Supp. 3d 1294
   (CIT 2020) ...............................................................................................45, 47

*Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177 (Fed. Cir. 1994)..............................3

*Transcom v. United States*, 121 F. Supp. 2d 690 (CIT 2000) ......................48, 49, 50

*Universal Camera Corp. v. NLRP*, 340 U.S. 474 (1951) ....................................17, 29

*USX Corp. v. United States*, 655 F. Supp. 487 (CIT 1987)....................................29

*Vietnam Finewood Company Limited, et. al v. United States*,
   CIT Consol. Ct. No. 22-00049....................................................................12, 36, 37

STATUTES and CONSTITUTIONS

5 U.S.C. § 706................................................................................................2, 36

16 U.S.C. § 3372.................................................................................................30

19 U.S.C. § 1516A(A)(2)...................................................................................37

19 U.S.C. § 1517..........................................................................................*passim*

19 U.S.C. § 1517(a)(3) .......................................................................................14

19 U.S.C. § 1517 (a)(5) ................................................................................*passim*

19 U.S.C. § 1517(b)(4)(D) ...............................................................................38

19 U.S.C. § 1517(c)(1) ...................................................................................*passim*

19 U.S.C. § 1517(f) ....................................................................................2, 14

19 U.S.C. § 1517(f)(1) ..................................................................................17

19 U.S.C. § 1517(g)(1) ...............................................................................2, 17

19 U.S.C. § 1517(g)(2) ...............................................................................2, 36

19 U.S.C 1592 .......................................................................................39, 40

28 U.S.C. § 1581(c) ........................................................................................2

28 U.S.C. § 2640(e) .......................................................................................2

U.S. Constitution, amend V. ........................................................................45

## REGULATIONS and COURT RULES

19 C.F.R. 165.1.............................................................................................39

19 C.F.R. § 165.24(a) ....................................................................................7

19 C.F.R. § 165.4............................................................................................46, 47

19 CFR §165.41 ...........................................................................................13

USCIT Rule 56.2(c)(1)...................................................................................1

## ADMINISTRATIVE DECISIONS

*Certain Hardwood Plywood Products from the People's Republic of China:
Amended Final Determination of Sales at Less Than Fair Value, and
Antidumping Order*, 83 Fed. Reg. 504 (Jan. 4, 2018)......................................*passim*

*Certain Hardwood Plywood Products from the People's Republic of China:
Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan 4, 2018)............................*passim*

*Multilayered Wood Flooring from the People's Republic of China: Final Clarification of the Scope of the Antidumping and Countervailing Duty Order*, 82 Fed. Reg. 27799 (June 19, 2017).........................................................43, 44

<u>OTHER SOURCES</u>

*BLACK'S LAW DICTIONARY* (11th ed. 2019).........................................................40

TABLE OF ADMINISTRATIVE RECORD CITATIONS

Page

DOCUMENT

*RR – H323923 Final Administrative Determination ("Administrative Review")*
PD 148, CD 94....................................................................................*passim*

*RR – Final Administrative Supplemental Determination ("Supplemental
Determination), PD 151, CD 95*...........................................................1, 16

*TRLED – Notice of Determination as to Evasion ("Evasion Determination)
PD 136, CD 81* ...................................................................................*passim*

*RAAAS -VN Finewood On-Site Verification Report ("Verification Report")*
PD 120, CD 70....................................................................................*passim*

*TRLED – Notice of Investigation and Interim Measures ("Notice of Initiation)*
PD 38, CD 174....................................................................................*passim*

*CBP Attaché – VN Finewood Site Visit Report ("Attaché Report)*
PD 31, CD 10......................................................................................*passim*

*Commerce – Transmittal Letter and Final Scope Ruling Antidumping and
Countervailing Duty Orders on Certain Hardwood Plywood Products from
The People's Republic of China ("Commerce Scope Ruling Memorandum")*
PD 133, CD 79.............................................................12, 20, 31, 32

*APPI – Request for Administrative Review,* PD 142, CD 90 ..............30, 33

*APPI – Additional Submission,* PD 89, CD 52 .........................8, 26, 27, 28

*APPI – RFI Response with Exhibits,* PD 72, CD 32.................8, 32, 33, 41

*VN Finewood – 4th Supplemental RFI Response with Exhibits*
PD 114, CD 66.................................................................................26

*VN Finewood – 2nd Supplemental RFI Response with Exhibits*
PD 109, CD 56.............................................................................23, 26

*VN Finewood –Questionnaire Response with Exhibits*
PD 87, CD 51 pt 1 ..........................................................................24

## I.   STATEMENT PURSUANT TO USCIT RULE 56.2[1]

### A. Administrative Determination Sought to be Reviewed

Consolidated Plaintiff, American Pacific Plywood, Inc. ("APPI"), contests (1) the January 28, 2022, determination issued under 19 U.S.C. § 1517(c) by U.S. Customs and Border Protection's ("CBP") Trade Remedy & Law Enforcement Directorate ("TRLED"), which found evasion ("*Evasion Determination*") under the Enforce and Protect Act ("EAPA") in EAPA Consolidated Case Number 7252, and (2) the June 6, 2022, decision under 19 U.S.C. § 1517(f) issued by CBP's Office of Regulations and Ruling ("OR&R") in *de novo* administrative review H323923 ("*Administrative Review*"), affirming the *Evasion Determination*, as supplemented by OR&R on July 6, 2022 in administrative appeal number H325765 ("*Supplemental Determination*"). [2]

### B. Issues Presented

1.     Whether CBP's determination that APPI entered "covered merchandise" through "evasion" was arbitrary and capricious, an abuse of discretion, and

---

[1] USCIT Rule 56.2(c)(1) requires that the plaintiff identify the Federal Register reference to the administrative determination sought to be reviewed.  EAPA determinations, however, are not published in the Federal Register.

[2] A public and a confidential administrative record of the administrative records in this EAPA case were filed with the court on August 29, 2022.  When citing record documents in this brief, references to documents found in the confidential administrative record will be identified by the prefix CD and the document number provided in the confidential document index, and the bates-stamp number found on the document.  Similarly, documents found in the public administrative record will be identified by the prefix PD and the document number provided in the public document index, and the bates-stamp number found on that document.

otherwise not in accordance with law.

2.      Whether CBP's failure to find any culpability associated with APPI's actions

as a predicate to determining that APPI entered hardwood plywood into the

United States by means of a material and false statement or act, or a material

omission, was arbitrary and capricious, an abuse of discretion, and otherwise not

in accordance with law.

3.      Whether CBP deprived APPI of procedural due process by failing to provide

it public summaries of certain key documents used by CBP in finding evasion

against APPI, and by imposing interim measures without providing APPI notice

and an opportunity to be heard.


## II.      JURISDICTION AND STANDARD OF REVIEW

This action is brought pursuant to 19 U.S.C. § 1517(g)(1) and 28 U.S.C. §

1581(c).  Under 28 U.S.C. § 2640(e), this court reviews this matter in accordance

with 5 U.S.C. § 706.

The EAPA statute at 19 U.S.C. 1517 (g) (1) requires this Court to review

whether CBP, in issuing a decision pursuant to 19 U.S.C. § 1517 (c) or an

administrative review issued pursuant to 19 U.S.C. § 1517 (f), 1) "fully complied"

with the statute's procedural requirements set out at 19 U.S.C. 1517(c) and (f), and

2) whether any of the agency's determinations were "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with the law," as set out at 19 U.S.C. §

1517(g)(2)(A), and (B).

An agency acts arbitrarily and capriciously when it "relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Thus, under this standard, the reviewing court must consider whether the underlying agency examined "the relevant data and articulate[d] a satisfactory answer for its action including a 'rational connection between the facts found and the choice made.'"  *Id.*, *quoting Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

An abuse of discretion occurs when "the decision is based on . . . factual findings that are not supported by substantial evidence . . .." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted).  This Court, in reviewing whether CBP abused its discretion, examines whether the agency's decision "1) is clearly unreasonable, arbitrary, or fanciful; 2) is based on an erroneous conclusion of law; 3) rests on clearly erroneous fact findings; or 4) follows from a record that contains no evidence upon which the agency could rationally base its decision." *Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1182 (Fed. Cir. 1994), *quoting Gerritsen v. Shirai*, 979 F.2d 1524, 1529 (Fed. Cir. 1992).

The two-part test set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) is the framework for reviewing whether an agency's statutory interpretation is not in accordance with law.  That test

requires a court to review whether the precise question at issue is addressed by the statute; if yes, then the court must give meaning to the expressed intent of Congress. *Id.* at 842.  If no, then the court may evaluate whether the agency's determination was based on a permissible construction of the statute. *Id.* at 843.

### III.    STATEMENT OF THE FACTS

Between May 1, 2018, and November 1, 2018, APPI entered 20 shipments of hardwood plywood into the United States.  These shipments were assigned the following entry numbers: [

].  It purchased these shipments from Vietnam Finewood Company Limited ("Finewood"), a Vietnamese-based manufacturer of hardwood plywood.

On July 9, 2018, Plywood Source, LLC ("Plywood Source" or the "Alleger") filed allegations pursuant to the EAPA claiming that APPI[3] and other importers were evading the antidumping and countervailing duty orders covering hardwood plywood from China by importing hardwood plywood manufactured by Vietnam Finewood Company Limited ("Finewood"). *See Notice of Initiation of Investigation*

---

[3]  The original filing by Plywood Source identified [Cosco Star International Co., Ltd] as the importer of record of the merchandise imported by APPI.  Prior to initiation of the investigation, Plywood Source amended its filing to name APPI as the importer of record.

*and Interim Measures,* Nov. 20, 2018 ("*Notice of Initiation*") at p. 1-2, PD 38 at

PR000102 - 103; CD 17 at BC-000037 – 038 (recounting the filing of the allegations

by the Alleger).  The antidumping duty and countervailing duty orders allegedly

evaded were *Certain Hardwood Plywood Products from the People's Republic of*

*China: Amended Final Determination of Sales at Less Than Fair Value, and*

*Antidumping Order*, 83 Fed. Reg. 504 (Jan. 4, 2018) (the "*Antidumping Order*") and

*Certain Hardwood Plywood Products from the People's Republic of China:*

*Countervailing Duty Order*, 83 Fed. Reg. 513 (Jan 4, 2018) (the "*Countervailing*

*Order*").  Receipt of the allegations were acknowledged on July 25, 2018, and the

separate actions against the individual importers were consolidated into EAPA

consolidated case 7252. *Notice of Initiation* at 2, PD 38 at PR000103; CD 17 at BC-

000038.

    In its allegations, Plywood Source claimed that Chinese origin hardwood

plywood was transshipped by Finewood through Vietnam into the United States

and was falsely declared to be of Vietnamese origin. *Id.* The Alleger asserted that

Finewood did not have the capacity to produce the volume of hardwood plywood it

shipped to the United States.  On August 15, 2018, U.S. Customs and Border

Protection ("CBP") initiated this investigation. *Id.*

    Next, a CBP Attaché team toured Finewood's mill on October 25, 2018, as

reported out in CBP's Interoffice Memorandum of October 29, 2018 (hereafter the

*Attaché Report*), PD 31 at PR000085 – 088; CD 10 at BC-000020 – 023.  The CBP

Attaché team toured the facility and made visual observations, but chose not to

access purchase records, sales records, or production records, reportedly because of time constraints.  Instead, the *Attaché Report* recommended an audit to "obtain the necessary documents and verify VF's purchases of imported products and plywood production capabilities."  *Id.* at p. 4, PD 31 at PR000088; CD 10 at 000023.

On November 20, 2018, CBP issued its *Notice of Initiation*.  As discussed above, CBP concluded that Plywood Source had provided evidence to reasonably suggest that APPI and the other importers were engaged in evasion.  *Notice of Initiation* at p. 4, PD 38 at PR000105; CD 17 at BC-000040.  CBP's decision relied on two videos provided by the Alleger.  One video showed workers offloading crates "**purported** to be plywood from China."  *Notice of Initiation* at 3, PD 38 at PR000104; CD 17 at BC-000039.  The other video showed a container of pre-packaged, but unidentified product, "**ostensibly** to be shipped in the pre-packaged crate to InterGlobal."  *Id.*  Direct evidence was not provided proving these assumptions.  Trade data represented by the Alleger as official Vietnamese customs data supplied by an unidentified Vietnamese Customs official merely layered on more presumptions rather than establishing the underlying basis for the faulty conclusion reached by CBP.[4]

CBP also relied on the *Attaché Report* to conclude that the site visit found several "inconsistencies and discrepancies" in quantities and descriptions.  *Id.* at 5,

---

[4] The veracity of this data does not appear to have ever been confirmed independently by CBP.  *See Evasion Determination* at p. 3-4, footnote 15, PD 136, PR002470 – 471; CD 81, BC-017130 – 131 (CBP confirming that spreadsheet "does not appear to be an original source document" and merely accepting Plywood Source's representation that the data was valid).

PD 38 at PR000106; CD 17 at BC-000041.  Yet only one discrepancy was profiled in the *Attaché Report* and highlighted in the *Notice of Initiation*, and that involved confusion as to an answer given by Finewood regarding the species of wood it used in its production.[5]

The *Notice of Initiation* also relied on other observations made in the *Attaché Report* as to the number and type of equipment at Finewood's mill, the number of employees, the hours of the employees, and other production information.  No records were inspected during this visit.  Neither the *Attaché Report* nor the *Notice of Initiation* give any indication if the individuals that made up the CBP Attaché team had technical experience in plywood production.  Notwithstanding these gaps, CBP in its *Notice of Initiation* concluded that Finewood did not have the manufacturing capacity to produce the quantity of product it was shipping to the United States.  CBP concluded that this evidence "reasonably suggests that VN Finewood is not manufacturing all the plywood it is exporting and selling domestically and is procuring it from another source."  *Notice of Initiation* at 6, PD 38 at PR000107; CD 17 at BC-000042.

The *Notice of Initiation* also constituted notice to APPI of the imposition by CBP of "interim measures" under 19 C.F.R. § 165.24(a).  These measures included 1) suspending liquidation of APPI's and the other importers' entries of hardwood plywood from Vietnam entered on or after August 15, 2018; 2) rate-adjusting all

---

[5] Based on other observations made by CBP in the *Attaché Report*, a reasonable conclusion CBP could have drawn was that this confusion was more a miscommunication rather than a relevant and purposeful omission by Finewood.

unliquidated entries under the investigation that had been entered as not subject to the *Orders* to reflect that they were subject to the *Orders* and requiring cash deposits; 3) requiring "live entry" on all future imports from the Importers; 4) extending the liquidation period for all unliquidated entries entered before August 15, 2018; and 5) evaluating the Importers' continuous bonds and requiring single transaction bonds as appropriate. *Id.*

Having determined a reasonable suspicion of evasion existed and after implementing interim measures, starting on February 4, 2019 CBP issued the first of two Requests for Information ("RFI") to APPI and the other importers, and of five RFIs to Finewood. Collectively, thousands of pages were submitted in responses to the various RFIs. APPI produced Finewood's production records for each shipment of hardwood plywood APPI imported. *See* Chart 1 *infra* at pp. 34-35 for the record citations for those production records. Later, APPI produced certificates of origin issued by the Vietnam Chamber of Commerce ("VCC") for each APPI shipment showing Vietnam as the country of origin ("COO"), and California Air Resource Board ("CARB")[6] certificates for each shipment. *Additional Submission on Behalf of APPI*, CD 52 at BC-015803 – 822 (COO documents); CD 52 at BC-015823 – 854 (CARB certificates).

On March 16 -17, 2019, members of CBP and its Regulatory Audit and Agency Advisory Services group ("RAAAS") conducted an on-site verification at

---

[6] CARB certificates are verifications issued by third-party certification bodies that composite wood products comply with formaldehyde emission standards.

Finewood, resulting in the issuance of a verification report ("*Verification Report*") on July 24, 2019. PD 120 at PR002233 – 252; CD 70 at BC-016919 – 938.  The point of the verification was to investigate whether Finewood could produce the quantities of hardwood plywood shipped to the United States and to test the validity of a subset of the documents Finewood, APPI and the other importers had submitted in response to the various RFIs.

During the verification visit, Finewood explained to CBP and RAAAS it had outsourced some core production to other Vietnamese companies.  *Verification Report*, PD 120 at PR002239; CD 70 at BC-016925.  Finewood, using toll manufacturers, supplied raw materials to them, who used these materials to produce semi-finished product known as plywood core platforms.  *Id*.  These plywood core platforms then were returned to Finewood, where it applied face and back birch veneers to create finished hardwood plywood.  *Id*.  Finewood explained it was able to increase its production of finished hardwood plywood by using tollers to produce the plywood core platforms.  *Id*.  Nevertheless, CBP concluded it could not determine Finewood's production capacity for finished hardwood plywood because Finewood used tollers. *Id*.  CBP provided no explanation for this conclusion despite now knowing that much of the initial core production was from the tollers, thus allowing Finewood to manage its capacity issues by using its manufacturing capacity to further manufacture the outsourced cores into finished hardwood plywood.

This conclusion is especially questionable given that RAAAS reviewed

Finewood's production and purchasing records, which showed the raw materials provided to the tollers, the semi-finished plywood core platforms returned by the tollers, and the finished hardwood plywood manufactured by Finewood. RAAAS reviewed records for 12 imported material purchases, 16 domestic material purchases, and 19 records for the production and sale of plywood to the importers. *Id,* PD 120 at PR002240 – 242; CD 70 at BC-016926 – 928. After reviewing these documents, RAAAS concluded that "[n]o discrepancies were noted during the verification of original production and sales documents to those previously provided by VN Finewood's RFI response." *Id.,* PD 120 at PR002242; CD 70 at BC-016928.

These documents showed that Finewood was purchasing and importing two-ply panels from a Chinese supplier, which, in turn, were sent to tollers. *Id.* These verified records supported Finewood's explanation that it was importing two-ply cores and providing them and other core veneers to the tollers to create some (but not all) plywood core platforms that Finewood subsequently used in its production of hardwood plywood it was manufacturing at its mill. In fact, RAAAS verified documents for [    ] purchases of Chinese two-ply panels. *Id.,* PD 120 at PR002240; CD 70 at BC-016926, and nine sets of sales and production records for finished plywood where Chinese two-ply was used in the toller's production of the plywood core platforms. *Id.,* PD 120 at PR002241; CD 70 at BC-016927. This included [    ] shipment for APPI, purchase order [                ]. *Id.*

In total, the documents validated by RAAAS verified the previous representations made by Finewood, APPI and the other importers. CBP noted in

the *Verification Report* that "the team verified the original documents for [    ] purchases of two-ply material.  The original purchase documents matched those previously submitted by VN Finewood to CBP."  *Id*.  The audit team also verified the purchase orders and payment records for six other imported raw materials, including single veneer sheets.  *Id*.  These documents also matched up with the purchase orders and payment records previously submitted to CBP for these imported raw materials.

Of the 16 domestic material purchase records reviewed, CBP verified 15 of those records as matching information previously provided to it.  *Id*.  Lastly, the auditors verified 19 sets of sales and production records for the imported merchandise.  The auditors found no discrepancies with these documents.  *Id.,* PD 120 at PR002227 – 228; CD 70 at BC-016927 – 928.

Thus, the auditors verified the accuracy of the documents it chose to verify, save for the one identified above.[7]  The documents established what Finewood orally told CBP – that it was purchasing imported and domestically sourced core platforms, including two-ply panels from China, and single veneer sheets, some of which were from China, and providing them to tollers, who worked them into platforms that Finewood finalized into finished hardwood plywood, and that this use of tollers allowed it to meet its orders.  The *Verification Report* cited no direct evidence that Finewood was importing finished hardwood plywood from China and

---

[7] It would be unreasonable for CBP to extrapolate that a respondent's entire submission is flawed by a single error.  *See, Fujian MacH. and Equip. Import & Export v. United States*, 276 F. Supp. 2d 1371 (CIT 2003).

transshipping it to the United States, as initially alleged by Plywood Source.

Having now learned that Finewood was importing Chinese origin two-ply panels into Vietnam for use in its tolling operations, CBP asked Commerce for a scope determination on the single issue of whether Chinese origin two-ply cores were within the scope of the *Antidumping Order* and *Countervailing Order*. PD 132 at PR002414.  This scope determination initiated on January 13, 2020. Upon its completion, Commerce concluded that Chinese two-ply was covered by the scope as a certain type of "veneered panel" and that the further processing of Chinese origin two-ply panels in Vietnam into hardwood plywood did not substantially transform the Chinese two-ply panels.  As a result, Commerce concluded that "Finewood's plywood produced in Vietnam using two-ply panels imported from China remains China." *Commerce Scope Ruling Memorandum* (Jan.21, 2022) at p. 44, PD133 at PR002462. [8]

Within one week of receiving back the scope decision, CBP issued its Notice of Determination as to Evasion ("*Evasion Determination*"), concluding that APPI and the other importers evaded the *Antidumping Order* and the *Countervailing Order*. *Evasion Determination,* PD 136 at PR002468; CD 81 at BC-017128.  In it, CBP concluded that substantial evidence existed demonstrating APPI and the others had imported Chinese-origin hardwood plywood subject to the *Orders* and had done so

---

[8]  Currently, Commerce's January 21, 2022, scope ruling based on CBP's referral of *EAPA Consol. Case No. 7252* is the subject of litigation in *Vietnam Finewood Company Limited, et. al v. United States*, CIT Consol. Ct. No. 22-00049.

by means prohibited by 19 U.S.C. § 1517 and 19 C.F.R. § 165.  *Id.,* PD 136 at

PR002469; CD 81 at BC-017129.

More specifically, the *Evasion Determination* focused on Finewood's

manufacturing capacity and the Alleger's claim that Finewood lacked the

manufacturing capacity to produce the volume of hardwood plywood that it exported

to the U.S.  CBP cited Finewood's use of tollers, and its refusal to introduce the

importers to the tollers, as proof of transshipping. *Id.,* PD 136 at PR002473; CD 81

at BC-017133. [9] CBP concluded that Finewood "could not meet its production

demands and purchased a varying combination of hardwood plywood, semi-finished

goods, *i.e.*, core/core platforms and/or two-ply panels, and veneers from **China and**

**domestic suppliers**." *Id.,* PD 136 at PR002473; CD 81 at BC-017133 (emphasis

added).  Notwithstanding CBP's acknowledgment that, at a minimum, some of

Finewood's production was Vietnamese, it concluded that "no feasible method on the

record" existed to differentiate product subject to the order and product outside the

scope of the order.  PD 136 at PR002475; CD 81 at BC-017135. CBP concluded that

all hardwood plywood imported by APPI and the other importers was subject to the

*Orders* as covered merchandise.  *Id.*

On March 14, 2022, APPI timely requested a *de novo* administrative review

of the *Evasion Determination* pursuant to 19 U.S.C. §1517(f) and 19 CFR §165.41.

The other importers also timely filed requests for administrative reviews.  On

---

[9]  The record has no evidence that CBP contacted any of the tollers in regard to its
investigation, notwithstanding that their identity had been provided by Finewood.

June 6, 2022, OR&R issued its *Administrative Review*, where it concluded that substantial evidence on the administrative record supported TRLED's findings that APPI and the other Importers evaded the *Orders* and imported covered merchandise within the meaning of 19 U.S.C. § 1517(a)(3) through evasion within the meaning of 19 U.S.C. § 1517(a)(5)(A). *Administrative Review*, PD 148 at PR002767; CD 94 at BC-023854.

Interestingly, OR&R agreed with APPI and the importers on one point, finding that the videos submitted by Plywood Source as a basis for its petition and CBP's decision thereafter that such information reasonably suggested evasion were not relevant evidence of transshipment by Finewood. *Id.,* PD 148 at PR002760 – 761; CD 94 at BC-023845 -846. Also, OR&R concluded that the videos provided no relevant evidence of Finewood's production capacity or lack thereof. *Id*.

OR&R, in evaluating whether the record substantiated the findings in the *Evasion Determination*, recognized as "undisputed" that Finewood's hardwood plywood was not exclusively made with Chinese-origin two-ply. *Id.,* PD 148 at PR002761; CD 94 at BC-023846. Despite that recognition, OR&R dismissed APPI and the other Importers position that TRLED failed in the *Evasion Determination* to distinguish between shipments that contained hardwood plywood made using Chinese-origin two-ply (which would be "covered merchandise"[10]) from those

---

[10] Pursuant to 19 U.S.C. § 1517(a)(3), "covered merchandise" under the EAPA is limited to merchandise subject to an existing antidumping or countervailing duty order, and pursuant to 19 U.S.C. § 1517 (a)(5), only covered merchandise can be

made without Chinese-origin two-ply (which would not be covered merchandise) as a "mistaken{} . . . attempt to shift the burden of proof from the Importers to CBP, for CBP to disprove evasion . . .." *Id.*

OR&R mischaracterized the record by stating that the documents provided by APPI could not tie specific APPI entries to the Finewood production records for the imported hardwood plywood. To the contrary, the administrative record contains documents submitted by APPI and Finewood in reply to the RFIs that link the Finewood production records[11] to APPI purchase order numbers and then those purchase order numbers to entry numbers. *See* Chart 1 *infra* at pp. 34-35. These documents clearly identify seventeen entries made by APPI that contained **no** Chinese two-ply and thus are not "covered merchandise."

OR&R rejected the Importers' arguments that TRLED failed to establish the requisite importer culpability inherent in 19 U.S.C. § 1517(a)(5)(A). OR&R dismissed this argument by characterizing the EAPA statute as one of strict liability. *Id.,* PD 148 at PR002768; CD 94 at BC-023853.

OR&R concluded that the record supported a finding of evasion, and that APPI's and the other importers' shipments were made by material and false statements when they were declared as type "01" entries, rather than type "03"

---

subject to a determination of evasion under the EAPA.

[11] OR&R also incorrectly referred to the records showing Finewood's purchases of cores and veneer as records of purchases made by APPI, when in fact the records were of Finewood's purchases. *Administrative Review,* PD 148 at PR002763 and ft. nt. 18; CD 94 at BC-023848 and ft. nt. 18.

entries subject to antidumping duty and countervailing duty.  OR&R affirmed the *Evasion Determination*, stating: "It was material and false for these entries to be made as type "01" entries.  That the material falsehood may have occurred as a result of a mistake does not mean that evasion has not occurred – a falsity within the meaning of the EAPA statute can occur as a result of a mistake.  In our view, the record as a whole, does not support APPI, FEA, and LWI's assertions that CBP should conclude that their entries were not subject to the AD/CVD Orders." *Id.,* PD 148 at PR002769; CD 94 at BC-023854.[12]

## VI.   ARGUMENT

The EAPA statute requires that CBP's *Evasion Determination* against APPI be "based on substantial evidence, with respect to whether . . .  covered merchandise was entered into the customs territory of the United States through evasion."[13]  19

---

[12] On June 6, 2022, OR&R contacted APPI and the other Importers via email to advise that due to an "inbox spam blocking malfunction," InterGlobal's timely-filed request for administrative review of the *Evasion Determination* had not been considered by OR&R prior to it issuing its *Administrative Review*.  OR&R announced it would review InterGlobal's submission and issue a supplemental *Administrative Review* in the future.  On July 6, 2022, OR&R issued its *Supplemental Determination*.  The *Supplemental Determination* addressed InterGlobal's arguments specifically, but affirmed the *Evasion Determination*, finding that "the record on a whole does not support IGF, APPI, FEA and LW's assertions that CBP should conclude that their entries were not subject to the AD/CVD Orders."  *Id.,* PD 151 at PR002997; CD 95 BC-023866.

[13]  The statute defines "evasion" as "entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise." 19 U.S.C. § 1517(a)(5)(A).

U.S.C. § 1517(c)(1).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951), *quoting Consol. Edison Co. of New York v. N.L.R.B.*,305 U.S. 197, 229 (1938). While substantial evidence may be "something less than the weight of the evidence," *Consolo v. Federal Maritime Comm'n*, 388 U.S. 607, 620 (1966), it must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In making its decision on APPI's *de novo* appeal pursuant to 19 U.S.C. § 1517(f)(1), OR&R was to "look . . . to the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence." *Gallant Ocean (Thailand) Co., Ltd. v. U.S.*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted).  In looking at the record as a whole, OR&R was to determine "whether the evidence and reasonable inferences from the record support (CBP's) finding." *Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation marks and citation omitted).

For the following reasons, this Court must declare the *Evasion Determination* and the *Administrative Review* to be arbitrary, capricious, an abuse of discretion and contrary to law.  *See*, 19 U.S.C. § 1517(g)(1) (judicial review of determinations under subsection (c) (*i.e.*, the *Evasion Determination*) and the review under subsection (f) (*i.e.*, the *Administrative Review*) in the CIT is to "determine whether the

17

determination and review [were] conducted in accordance with subsections (c) and (f)."  APPI respectfully submits that CBP in its *Evasion Determination* fell short of its burden of proving through substantial evidence on the record that APPI entered covered merchandise into the United States through evasion.  Thereafter, in its *Administrative Review*, OR&R erred also in affirming the *Evasion Determination* by finding that substantial evidence on the record supported a finding of evasion.  Because the record does not support either decision, this Court must find for APPI and the other importers and hold that the agency acted arbitrarily and capriciously,[14] abused its discretion, and otherwise acted contrary to law, and remand the matter to CBP to make findings consistent with its remand order.

### A. Substantial Evidence on the Record Does Not Support a Finding of Evasion Against APPI.

The focus of CBP's EAPA investigation changed during its pendency. Originally, the Alleger presented this matter to CBP as one involving "traditional" transshipment – alleging that it had facts supporting an assertion that Finewood was **importing finished hardwood plywood from China and then reshipping it to APPI** and the other Importers as finished hardwood plywood. *Notice of Initiation*, PD 38 at PR 000105; CD 17 at BC-000040.  The Alleger's offers of "proof", however, were categorically dismissed by OR&R during its *de novo* review

---

[14] In applying the "arbitrary and capricious" standard, this court should note that "in their application to the requirement of factual support the substantial evidence test and the arbitrary or capricious test are one and the same.  The former is only a specific application of the latter . . .."  *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C. Cir. 1984).

as "not provid[ing] any relevant evidence of transshipment or evidence of Finewood's production capacity, or lack thereof." *Administrative Review*, PD 148 at PR002761; CD 94 at BC-023846.  Furthermore, the thousands of pages of documents submitted to CBP by Finewood, APPI, and the other importers documenting Finewood's purchases and use of raw and semi-finished materials to produce the imported hardwood plywood proves that Finewood did not import finished hardwood plywood from China into Vietnam and then reship it to APPI in the United States.

Instead, what CBP discovered in the investigation, and what the record supports, is that:

> Finewood did not have the production capacity to fulfill its sales orders; but instead, in addition to Vietnamese raw materials, it purchased and imported materials, including two-ply panels and single veneer sheets, from a Chinese supplier, which it subsequently set to "tollers" in Vietnam, to produce its finished hardwood plywood shipped to the United States.

*Administrative Review*, PD 148 at PR002757; CD 94 at BC-023842.  Thus, the EAPA investigation started based on alleged traditional transshipment of finished hardwood plywood from China through Vietnam into the United States, of which CBP found no substantial evidence in support thereof, but ended up being recast as to whether:

> substantial evidence supports the determination that the finished hardwood plywood, manufactured in Vietnam, and imported into the United States, contained Chinese-origin two ply panels, and thus remained of Chinese origin for AD/CVD purposes and within the scope of the AD/CVD Orders . . ..

*Id.,* PD 148 at PR 002760; CD 94 at BC-023845.  As discussed above, Chinese-origin

two-ply panels were found by the Department of Commerce to be "veneer panels" within the scope of the *Antidumping Order* and the *Countervailing Order*, and that the production in Vietnam of finished hardwood plywood did not substantially transform the Chinese two-ply panels into Vietnamese origin hardwood plywood. *Commerce Scope Ruling Memorandum* (Jan.21, 2022), PD 133 at PR002419.  Based on Commerce's scope interpretation, Finewood's hardwood plywood, if manufactured using Chinese two-ply as an input, remained within scope of the *Orders*.

### 1. CBP Acted Arbitrarily and Capriciously, it Abused its Discretion and Otherwise Acted Not in Accordance with Law by Finding that 17 of APPI's Entries Were "Covered Merchandise."

A finding of evasion under the EAPA statute requires the presence of "covered merchandise" being entered into the customs territory of the United States by a material and false document, transmission, or information, or by a material omission, which results in a violation of the antidumping or countervailing duty laws.  *See*, 19 U.S.C. §§1517 (a)(5); (c)(1).  In this case, "covered merchandise" is merchandise subject to the *Antidumping Order* and the *Countervailing Order*, which includes finished hardwood plywood made in China, and based on Commerce's scope determination, finished hardwood plywood made in Vietnam using Chinese origin two-ply panels.  Only entries of goods subject to antidumping duty orders or countervailing duty orders must be made as type "03" entries; all others are legally correct if made as "01" entries.

APPI respectfully submits that its entries of hardwood plywood

manufactured by Finewood that did not use Chinese two-ply panels as a raw material are outside the scope of both *Orders* and are not "covered merchandise" as defined by the EAPA statute. In turn, those shipments did not enter the customs territory of the United States through evasion, as required per the clear statutory language of 19 U.S.C. §1517 requiring the presence of "covered merchandise." CBP's conclusions in its *Evasion Determination* and in its *de novo Administrative Review*, therefore, that APPI made material and false statements when it declared its entries of hardwood plywood from Vietnam made without Chinese two-ply as type "01" entries rather than "03" entries were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Those shipments did not contain plywood hardwood covered by the *Antidumping Order* and the *Countervailing Order* and as such were properly declared as "01" entries.

The record established that Finewood's hardwood plywood operations utilized Chinese-origin two-ply, Vietnamese-origin core platforms, and Chinese and Vietnamese origin core, front and back veneers. *Administrative Review*, PD 148 at PR002761; CD 94 at BC-023846 ("it is undisputed that Finewood used both Vietnamese-origin two-ply and Chinese-origin two-ply in is hardwood plywood operations"). In other words, the record supports a finding that some of Finewood's hardwood plywood incorporated Chinese two-ply, and thus was within scope of the *Orders*, and some was not because it did not use Chinese two-ply. The record also provided CBP overwhelming documentary proof of which shipments contained Chinese two-ply and which ones did not, including for the shipments made to APPI.

This is a key issue currently before the court. In the *Administrative Review*, CBP characterized its responsibility in an EAPA administrative review as "not whether every entry during the period of investigation was made with false information . . .. Thus, in an EAPA review, RR is not required to analyze entry by entry, line by line, and make a determination on an entry-line-specific basis, whether evasion has occurred." *Id.,* PD 148 at PR002765; CD 94 at BC-023851.

The EAPA statute, however, requires that level of review when the parties put forward evidence to show that the entries at issue do not contain "covered merchandise." As such OR&R acted contrary to law in its *Administrative Review*. Per 19 U.S.C. §1517(a)(5), "evasion" exists only if covered merchandise is entered into the U.S by means of a false document, transmission or information, or a material omission. *BP America Production Co. v. Burton,* 549 U.S. 84, 91 (2006) (statutory text, unless otherwise defined, is "generally interpreted in accordance with [its] ordinary meaning"). Thus, an EAPA decision against an identified importer, like APPI, must be supported by substantial evidence that the importer's entries contained covered merchandise. The record in an EAPA case must contain substantial evidence supporting CBP's finding for each of the importer's entries that CBP identified as within its EAPA investigation. *Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d 1324, 1350 (CIT 2021) ("the EAPA statute empowers Customs to investigate alleged allegations of evasion and **determine whether entries under an investigation are 'covered merchandise'**") (emphasis added). Cleary, goods outside the scope of an antidumping duty or countervailing duty order cannot be

subjected to the penalty of evasion.

CBP simply dismissed its statutory obligation, concluding that the parties had

failed to provide adequate production evidence "to allow TRLED to determine which, if

any, of the Requesters' entries did not contain Chinese-origin covered material." *Id.,*

PD 148 at PR002765; CD 94 at BC-023851. The substantial evidence on the record

put forward by the parties, including APPI, refutes this conclusion.

First, Finewood identified which of its orders of finished hardwood plywood

contained Chinese two-ply and which did not. *See, Vietnam Finewood, 2nd*

*Supplemental RFI Response, Exh. SQ2-1*, CD-56 at BC-016090 - 114. For example,

that exhibit identified [


], listed under the [                                    ] name. *Id.,* CD-56,

BC-016091-016196. [                              ] identify APPI's purchases [


[

            ] *Id.* The [      ] rows represent [      ] discrete APPI purchase orders:

[                                ], which are identified under the [

        ] columns on the spreadsheet. *Id.*

That exhibit also identifies a corresponding exhibit number for each of

[                                  15], and these various exhibits contain thousands

---

15 APPI's exhibit numbers run from [      ] to [      ], the supporting documents for

of pages of the relevant [

.]  *See generally, Vietnam Finewood Questionnaire Response with Exhibits*, CD 51 pt.1 at BC-010905 through CD 51 pt. 6 at BC-012866.  These production records included documentation relating to:  [

17] The production documents identify the [

]  *Id.*

_____

which are set out at CD 51 pt. 1 at BC-011061 - 306.

16 APPI's first purchase was of [hardwood plywood made using a complete core platform procured by Finewood.]  *See* production documents for APPI purchase order number [11602] at CD 52 at BC-015411 – 417.

17  The record contains two examples of ["production record explanation[s]"] provided by Finewood.  *See, Vietnam Finewood Questionnaire Response with Exhibits*, CD53 at BC-015868 and BC-015886.  These translated documents walk the reader through the production records for two specific purchase orders and as such are illustrative of the how to review the production records submitted for the other shipments.

This evidence on the record is substantial in scope, samples of which were verified by RAAAS in its *Verification Report* and found to be reliable: "[n]o discrepancies were noted during the verification of original production and sales documents to those previously provided in VN Finewood's RFI response". *Verification Report*, PD 120 at PR002242; CD 70 at BC-016928.  As to shipments of hardwood plywood incorporating Chinse two-ply, RAAAS noted that: "[T]he team verified the original documents for purchases of two-ply material.  The original purchase documents matched those previously submitted by VN Finewood to CBP." *Id.,* PD 120 at PR002240; CD 70 at BC-016926.  Thus, the administrative record contains a spreadsheet and RAAAS verified data supporting that spreadsheet which pinpoint the exact shipments that contained Chinese two-ply and the ones that did not, based on Finewood's production records. This information was available to CBP early on in the investigation and prior to RAAAS' May 16-17, 2019, verification site visit, having been produced by Finewood on April 9, 2019.

On April 2, 2019, APPI also produced to CBP copies of Finewood's production records for each of APPI's shipments of hardwood plywood from Finewood.[18]  This included the production records for APPI purchase orders [

---

[18] *See* Chart 1, *infra* pp. 34-35.  APPI's purchase order numbers are found on each invoice issued to APPI, in both printed and handwritten form.  The production documents relevant to a particular purchase order and invoice follow.

Also, the confidential record is missing APPI's submission of production records associated with purchase order number [      ]; however, the record citations listed for this purchase order in Chart 1 is to the copies of the relevant documents submitted by Finewood for this purchase order.

], which were the purchase orders identified by Finewood as containing Chinese-origin two-ply. *See Vietnam Finewood, 2nd Supplemental RFI Response, Exh. SQ2-1,* CD CD56 at BC-016091 - 196.  Specifically, the production records for APPI purchase orders [                         ] are at *Additional Submission on Behalf of APPI,* CD52 at BC 015460 - 477 for purchase order [        ], *id,* CD52 at BC-015569 - 598 for purchase order [        ], and *id,* CD52 at BC-015543 - 568 for purchase order [        ]. These production records identify Finewood's use of [

] as a raw material to manufacture some, but not all, of the hardwood plywood associated with these three APPI purchase orders.  In each case, these translated documents identify [         ] as part of the raw materials used to manufacture the goods associated with APPI purchase orders [

].[19]

    RAAAS verified nine document sets containing Chinese two-ply and found no discrepancies.  *Verification Report,* PD 120 at PR002241 – 242; CD 70 at BC-016927 - 928.  One of those verified sets contained the production records for APPI

---

[19] In *Finewood's Fourth Supplemental RFI* response, it acknowledged that it had provided [

], when those products should have been identified as [          ].  CD 66 at BC-16290.  It then resubmitted corrected documents for those shipments impacted by this error, identifying where correction was required.  As this relates to APPI's purchases, for APPI purchase order [        ], pages CD 66 at BC-016437 - 438 replace CD 56 BC-015555 - 556, and CD 66 at BC -016439 - 440 replace CD 56 at BC-015558 - 559, respectively.  For APPI purchase order [      ], CD 66 at BC-016418 - 419 replace CD 56 BC-015584 - 585 respectively, and CD 66 at BC-016421 replaces CD 56 BC-015589.

purchase order [          ].  *Id.,* PD 120 PR002241; CD 70 at BC-016927.

Similarly, the productions records APPI submitted for its other shipments establish that the hardwood plywood used to fill those orders **did not** contain Chinese two-ply panels.  These records show that the hardwood plywood associated with those purchase orders, [

] were manufactured **without** Chinese two ply panels.  The translated documents do not identify "two plies" being used in the production of this merchandise.[20]

In turn, other documents in the administrative record link APPI's purchase orders to its CBP entries.  *See* Chart 1 *infra* at pp. 34-35 for record citations to the Customs Form ("CF") 7501 for each of APPI's entries.  The APPI purchase order number was handwritten on each CF 7501 that APPI submitted to TRLEDs in response to its first RFI.  Thus, focusing only on the shipments where the record shows use of Chinese two-ply in manufacturing APPI's shipments, the hardwood plywood associated with purchase order number [        ] was imported on entry

---

[20] *See,* CD52 at BC-015411 to BC-015417 [                    ]; CD52 at BC-015418 to BC-015437 [                ]; CD52 at BC-015438 to BC-015459 [                    ]; CD52 at BC-015478 to BC-015490 [                ]; CD52 at BC-015491 to BC-015503 [                ]; CD52 at BC-015504 to BC-015516 [                ]; CD52 at BC-015517 to BC-015529 [                )]; CD52 at BC-015530 to BC-015542 [                ]; CD52 at BC-015599 to BC-015619 [                ]; CD52 at BC-015620 to BC-015632 [                ]; CD52 at BC-015633 to BC-015645 [                ]; CD52 at BC-015646 to BC-015663 [                ]; CD52 at BC-015664 to BC-015681 [                ]; CD52 at BC-015682 to BC-015695 [                ]; CD52 at BC-015696 to BC-015708 [                ]; CD52 at BC-015709 to BC-015726 [                ]; and CD51 pt. 1 at BC-011210 to BC-011218 [                ].

number [                    ], PD 72 pt. 1 at PR000914; plywood associated with P.O.

number [       ] was on entry number [                  ], PD 72 pt. 1 at PR000928;

and, P.O. number [       ] was on entry number [                  ], PD 72 pt. 1 at

PR000926.  These are the only APPI entries containing any hardwood plywood

meeting the post-*Commerce Scope Ruling* definition of "covered merchandise"

because of the presence of the Chinese two-ply in the hardwood plywood.

The remaining APPI entries subject to this EAPA investigation – [



] do not contain "covered merchandise." Per the statutory

language of 19 U.S.C. §§1517 (a)(5); (c)(1), these entries as a matter of law were not

entered by APPI into the customs territory of the United States by means of evasion

because those entries contain no hardwood plywood manufactured using Chinese

two-ply or other "covered merchandise" as an input.  In light of this record, CBP's

decisions to the contrary were arbitrary, capricious, an abuse of discretion, and

contrary to law.

In *Diversified Products Corp. v. United States*, the Court of International

Trade held that "it is appropriate to set aside the [agency's] decision when the court

'cannot conscientiously find that the evidence supporting that decision is

substantial, when viewed in the light that the record in its entirety furnishes,

including the body of evidence opposed to [that] view.'" *Diversified Products Corp.*

*v. United States*, 572 F. Supp. 883, 888 (CIT 1983), *quoting Universal Camera Corp. v. NLRP*, 340 U.S. 474, 488 (1951).  This means that CBP, in basing its *Evasion Determination* and its *Administrative Review* on purported substantial evidence on the record, as a matter of law had to consider evidence from which conflicting inferences could be drawn or which detracted from the purported substantial evidence upon which the agency's decision was based.  *Atlantic Sugar, Ltd v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).  CBP's conclusions in its *Administrative Review* that APPI and the other parties failed to provide evidence "to allow TRLED to determine which, if any, of the Requester's entries did not contain Chinese-origin covered material," PD 148 at 002742, CD 94 at BC-023851, jumps off the page as contrary to this rule of law when one considers the available record evidence before it.

      2.   OR&R Cited No Evidence, Much Less
            <u>Substantial Evidence, that APPI Engaged in Evasion.</u>

Notwithstanding that substantial evidence cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence," *USX Corp. v. United States*, 655 F. Supp. 487, 489 (CIT 1987), OR&R took a few superficial swipes at APPI, trying to distinguish away the more than substantial record evidence put forward by APPI demonstrating that certain of its entries did not contain Chinese two-ply. PD 148 at 002761 – 762; CD 94 at BC-023847 – 848. These attempts, however, in no way rationally connect the facts on the record with the conclusions drawn by the agency. *Motor Vehicle Mfrs Ass'n of U.S., Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (defining arbitrary and capricious as a "decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

For example, OR&R points to three Lacey Declarations filed by APPI for entries [                                                      ] as substantial evidence supporting TRLED' conclusion that all APPI's entries contain covered merchandise, and mischaracterizing APPI's argument as one where its merchandise was represented as "completely devoid of Chinese-origin material."[21] *Administrative Review*, PD 148 at PR002761; CD 94 at BC-023847.  As OR&R points out, these three declarations identified the birch and poplar portions of the imported hardwood plywood as China origin.[22] *Id*.

The record, however, established that Finewood purchased single-ply veneers

---

[21]  APPI rejects OR&R's mischaracterization of its position about the composition of the hardwood plywood it purchased from Finewood.  APPI always argued that most of its entries did not contain Chinese-origin **two ply**.  *See generally*, *APPI Request for Administrative Review*, CD90 at BC-023702.  It never argued that its merchandise was devoid of "Chinese-origin material," because some of its merchandise was made using Chinese-origin single-ply veneers.  Single-ply Chinese origin veneers, however, are not within the scope of either the *Antidumping Order* or the *Countervailing Order*, so its presence in hardwood plywood (without the presence also of Chinese origin two-ply panels) does not create covered merchandise or support a finding of evasion.

[22]  Pursuant to the Lacey Act, importers of products that contain plant material and which are classified under certain tariff provisions, must file import declarations that includes, among other data, the scientific name of plant material and the country of origin where the plant was harvested.  16 U.S.C. § 3372.

from China too in addition to Chinese-origin two-ply. *Evasion Determination*, PD

136 at PR002474; CD81 at BC-017134. These types of veneers, however, are single-

ply items. Chinese-origin single-ply veneers are not Chinese-origin two-ply panels,

and only hardwood plywood manufactured with the latter was found to be within

the scope of the *Antidumping Order* and the *Countervailing Order*. *Commerce*

*Scope Ruling Memorandum* at p. 1, PD 133 at PR002419. Thus, these Lacey

Declaration are not evidence that entries [

] contained hardwood plywood made using Chinese two-ply.

And Lacey Declarations issued for shipments of hardwood plywood produced

using Chinese-origin single-ply veneers would identify the origin of those woods as

Chinese, as that would be the country of origin of that plant materials. The

production records for these three APPI purchase orders confirm that the hardwood

plywood was produced without any Chinese-two ply panel, but with single-ply

veneers. *See* Chart 1 *infra* at pp.34-35 for citations to the record for the production

records for purchase orders [                                                                      ].

OR&R makes a similar observation later in its *Administrative Review*,

concluding that the record "contradicted APPI's claims of limited sources from China"

and its claim (again, mischaracterized) that its entries were "devoid of Chinese

material." *Administrative Review*, PD 148 at PR002762; CD 94 at BC-023848. Again,

as discussed at footnote 21 *supra*, APPI never framed its position as its shipments were

devoid of Chinese material, but rather that all but [     ] of its entries of hardwood

plywood are free of Chinese-origin two-ply panels. Thus, OR&R's identification of a

supplier selling to Finewood Chinese-origin two-ply panels and Chinese origin one-ply

veneers is not a "gotcha" moment. *Id.* Rather, that information is consistent with the

substantial evidence on the record showing how Finewood procured different types of

raw materials from a variety of sources, including Chinese origin two-ply panels and

other one-ply veneers from China or Vietnam, and then further processed them,

usually with the help of a toller to make the plywood core platforms, into finished

hardwood plywood in Vietnam.  But only finished hardwood plywood made using the

Chinese origin two-ply panels, and not one-ply veneers, is within the scope of the

*Orders.  See, Commerce Scope Ruling Memorandum* at 44, PD 133 at PR002419.

OR&R took a pick and choose approach in attempting to dismiss the record

documents submitted by APPI.  For example, OR&R rejected APPI's position that

the record allowed CBP to identify the APPI entries of hardwood plywood made

with Chinese two-ply panels, and those made without it.  First, OR&R focused on

APPI's 1139-page March 4, 2019, RFI response.  *Administrative Review*, PD 148 at

PR 002762; CD 94 at BC-023848.  It concluded that this submission did not provide

the production records from which CBP could have confirmed which of the

underlying raw materials were Chinese origin two-ply panels and which were not.

*Id*.

The record in this case, however, consisted of more than APPI's March 4, 2019,

RFI response.  APPI also submitted a second RFI response on April 2, 2019, and this

submission contained the production and sourcing documents that OR&R identified as

missing from the earlier response.[23]  See Chart 1, *infra* at pp. 34-35, for record citations to these documents.

Similarly, OR&R complained that APPI's "invoices are not traceable back to any specific entry . . . ."  *Id.*  Yet, each invoice in the record contained the APPI purchase order number, and each of the CF 7501s for APPI's entries (which were forwarded to CBP on March 4, 2019, as part of that RFI response and were thus part of the record) were marked with the corresponding purchase order number.  This information was called to OR&R's attention in APPI's brief filed as part of OR&R's *de novo* review. *APPI Request for Administrative Review*, PD 142 at PR002529 – 530; CD 90 at BC-023704 - 705.

In making its decision on APPI's *de novo* appeal, OR&R had to "look . . . to the **record as a whole**, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co., Ltd. v. U.S.*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted but emphasis added), and determine "whether the evidence and reasonable inferences from the record support (CBP's) finding." *Daewoo Elecs. Co. v. Int'l Union of Elec., Elec., Technical, Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation marks and citation omitted).  The examples cited above from the *Administrative Review* show that OR&R could not have possibly reviewed the entire record for evidence showing the traceability and identity of APPI's entries

---

[23] These documents were also submitted by Finewood when it responded to its first RFI on March 22, 2019.

of hardwood plywood made with and without Chinese origin two-ply panels. The "fact findings" OR&R cited in dismissing APPI's position on the traceability issue are easily discredited by the vary administrative record it was charged to review in its entirety and not selectively.

APPI respectfully submits that the record clearly establishes which APPI entries were made with Chinese two-ply panels, and which were not. The following chart sets out the pertinent administrative record citations linking the APPI production documents to its purchase order numbers and then to the entry numbers found on its CF 7501s. The chart also identifies those shipments where Chinese two-ply panels were used as a component in the finished hardwood plywood.

## CHART 1

| APPI PO # | Production Records Citation | Two Ply Records Citation | Entry Number | Entry Number Citation |
|---|---|---|---|---|
| | | | | |
| [          ] | CD52 at BC-015411 to BC-015417 | N/A | [          ] | PD 72 pt 1 at PR000908 |
| [          ] | CD52 at BC-015418 to BC-015437 | N/A | [          ] | PD 72 pt 1 at PR000910 |
| [          ] | CD52 at BC-015438 to BC-015459 | N/A | [          ] | PD 72 pt 1 at PR000912 |
| [          ] | CD52 at BC-015460 to BC-015477 | CD56 at BC-015467 to BC-015469 | [          ] | PD 72 pt 1 at PR000914 |
| [          ] | CD52 at BC-015478 to BC-015490 | N/A | [          ] | PD 72 pt 1 at PR000916 |
| [          ] | CD52 at BC-015491 to BC-015503 | N/A | [          ] | PD 72 pt 1 at PR000918 |
| [          ] | CD52 at BC-015504 to BC-015516 | N/A | [          ] | PD 72 pt 1 at PR000920 |
| [          ] | CD52 at BC-015517 to BC-015529 | N/A | [          ] | PD 72 pt 1 at PR000922 |
| [          ] | CD52 at BC-015530 to BC-015542 | N/A | [          ] | PD 72 pt 1 at PR000924 |

| | | | | |
|---|---|---|---|---|
| [         ] | CD52 at BC-015543 to BC-015568; CD 66 at BC-016437 to BC-016438CD 66 at BC-016439 to BC -016440 | CD56 at BC-015551 to BC-015554 | [         ] | PD 72 pt 1 at PR000926 |
| [         ] | CD52 at BC-015569 to BC-015598; CD 66 at BC-016418 to BC-016419; CD 66 at BC-016421 | CD56 at BC-015473 to BC-015474 | [         ] | PD 72 pt 1 at PR000928 |
| [         ] | CD52 at BC-015599 to BC-015619 | N/A | [         ] | PD 72 pt 1 at PR000930 |
| [         ] | CD52 at BC-015620 to BC-015632 | N/A | [         ] | PD 72 pt 1 at PR000932 |
| [         ] | CD52 at BC-015633 to BC-015645 | N/A | [         ] | PD 72 pt 1 at PR000934 |
| [         ] | CD52 at BC-015646 to BC-015663 | N/A | [         ] | PD 72 pt 2 at PR000936 |
| [         ] | CD52 at BC-015664 to BC-015681 | N/A | [         ] | PD 72 pt 2 at PR000938 |
| [         ] | CD52 at BC-015682 to BC-015695 | N/A | [         ] | PD 72 pt 2 at PR000940 |
| [         ] | CD52 at BC-015696 to BC-015708 | N/A | [         ] | PD 72 pt 2 at PR000942 |
| [         ] | CD52 at BC-015709 to BC-015726 | N/A | [         ] | PD 72 pt 2 at PR000944 |
| [         ] | CD51 pt. 1 at BC-011210 to BC-011218 | N/A | [         ] | PD 72 pt 2 at PR000946 |

Simply stated, the administrative record contains documentation of

Finewood's shipments to APPI made with Chinese two-ply and which were not.  For

those entries APPI imported of hardwood plywood that was made without Chinese

two-ply, evasion did not occur.  Those entries, [



], were

entered properly as "01" entries, meaning that APPI made no statement that was

material and false or engaged in a material omission that would support a finding of

35

evasion as to those shipments.

In sum, CBP's determinations in the *Evasion Determination* and the

*Administrative Review* that shipments to APPI from Finewood of hardwood plywood

made in Vietnam without Chinese two-ply were "covered merchandise" were

arbitrary and capricious, an abuse of discretion and in violation of 19 U.S.C. §

1517(g)(2) and 5 U.S.C. § 706, or otherwise not in accordance with law, and

unsupported by substantial evidence as required under 19 U.S.C. § 1517(c)(1)(A).

The substantial evidence standard requires proof that does "more than create a

suspicion of the existence of the fact to be established." *N.L.R.B. v. Columbian

Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).  Had CBP conducted a

thoughtful review of the entire record it would have found verified evidence easily

distinguishing hardwood plywood made with Chinese-origin two-ply from product

made without it and records tying those transactions to specific APPI entries.  The

Court must remand this matter to CBP with directions to reconsider the record on

this issue in conformity with the Court's decision.

> 3.  This Court Should Reserve Judgment on APPI's
>       Entries of Hardwood Plywood Manufactured with Chinese Two-Ply.

APPI respectfully requests that this Court reserve decision on those entries

where the record evidence establishes that the hardwood plywood was made with

Chinese two-ply.  This request involves APPI's entries [                    ], [

      ], and [                    ].[24]

---

[24] APPI is mindful that this court denied the parties' consent motion for a stay
pending resolution of *Vietnam Finewood Company Limited, et. al v. United States*,

As the court is aware, Commerce's scope determination finding that Chinese two-ply is a panel veneer and thus within the scope of the *Antidumping Order* and the *Countervailing Order*, and that Chinese two-ply is not substantially transformed when manufactured into hardwood plywood in Vietnam, is currently under judicial review.  *See*, *Vietnam Finewood Company Limited, et. al v. United States*, Consol. CIT Ct. No. 22-00049.  A final decision of that lawsuit will be dispositive of the issue of whether the scope of the *Antidumping Order* and the *Countervailing Order* includes Chinese two-ply panels and hardwood plywood made in Vietnam therefrom.

In turn, if a final decision in that matter reverses Commerce's scope ruling, then hardwood plywood made with Chinese two-ply panels would no longer be within the scope of *Antidumping Order* and the *Countervailing Order*.  APPI, therefore, would not have imported covered merchandise or engaged in evasion regarding its entries [                    ], [                    ], and [                    ].  By allowing judicial review of the scope determination to reach final decision on the merits on this critical issue, this Court will be giving meaning to all subsections of the EAPA statute, one of which states that parties to an EAPA case have the right to commence an action at the CIT under 19 U.S.C. § 1516A(A)(2) contesting a

---

Consol. CIT Ct. No. 22-00049.  CIT Consol. Ct. No. 22-213 at ECF No. 30.  However, short of staying the entire EAPA case, reserving decision on the entries incorporating Chinese origin two-ply until a time after the scope case is final would safeguard APPI's and the other Importers' rights to relief on these entries, which rights will be foreclosed if this court decides the two-ply issue based on the current Commerce scope determination without the benefit of a final judicial decision on the correctness of that scope determinations.

Commerce scope decision made in response to an EAPA referral.  19 U.S.C. §
1517(b)(4)(D).  This Court, by deciding this issue without the benefit of a final
decision in the ongoing scope case, would gut the benefit of judicial review that
subsection 1517(b)(4)(D) offers those importers negatively impacted by the results of
a scope referral in an EAPA case. *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("[a]
statute should be construed so that effect is given to all its provisions, so that no
part will be inoperative or superfluous, void or insignificant . . .").  This can be
avoided if this Court waits for a final decision on the scope before it decides this
issue in this case.

Based on the record, the underlying decisions in the *Evasion Determination*
and the *Administrative Review* are not supported by substantial evidence and are
otherwise contrary to 19 U.S.C. § 1517.  OR&R also committed legal error by
interpreting the EAPA statute as not requiring CBP to investigate the record on a
specific transaction basis so to separate covered merchandise from that outside of
scope.  CBP, by reaching those decisions, acted arbitrarily, capriciously, abused its
discretion, and acted otherwise not in accordance with law, and the matter must be
remanded to the agency for further proceedings in accordance with the Court's
decision.

**B. CBP's Determinations that APPI Entered Merchandise By Means of a Material and False Statement or a Material Omission Failed to Establish APPI's Culpability**

CBP is required under the EAPA statute to find that the importer's entry of covered merchandise was made by a **material and false statement or act or material omission.**  19 U.S.C. § 1517(a)(5), (c)(1)(A). This requirement has been construed to mean that CBP must find some degree of culpability that an importer engaged in evasion as a predicate to CBP's determination.  *Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d 1324, 1355 (CIT 2021) ("neither the text of the EAPA statute nor 19 C.F.R. 165.1 supports Customs' statement that it does not need to establish 'any level of culpability'").  Because CBP failed to establish whether APPI acted with any level of culpability, its *Evasion Determination* and its *Administrative Review* are clearly erroneous as a matter of law and fact and those determinations are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

OR&R conceded that CBP made no finding as to any culpability that APPI or the other importers engaged in that resulted in them making material and false statements or material omissions when they imported the hardwood plywood subject to this EAPA investigation: "[19 U.S.C. § 1517(a)(5)] does not include a requirement that CBP find culpability prior to making a determination of evasion."  PD148 at PR002766; CD 94 at BC-023852.  Characterizing the EAPA as a strict liability statute, OR&R compared it to Customs' civil penalty statute, 19 U.S.C 1592, the latter being a statute that expressly requires a defined level of culpability – either negligence, gross

negligence or fraud.  Therefore, OR&R posited, had Congress wanted the EAPA statute to require a finding that "the importer did so intentionally, or without exercise of reasonable care, Congress would have done so intentionally . . .."  PD148 at PR002767; CD 94 at BC-023853.  *Id.*

The requirement in section 1592(a) that CBP find a specific level of culpability to measure an importer's alleged malfeasance does not negate CBP's obligation under the EAPA statute to find some level of importer culpability to support a finding of evasion.  They are different statutes.  The EAPA statute speaks of actions that are false and omissions that are material, actions that connote the presence of some degree of culpability by the importer.[25]  Therefore, CBP is required to find some presence of importer culpability before it can conclude that covered merchandise was entered by means of a material and false statement or act or material omission, notwithstanding that Congress did not define culpability in terms of one of three (or more) specific categories.  *See, Diamond Tools Tech. LLC v. United States*, No. 20-00060, 2022 Ct. Int'l Trade LEXIS 146, Slip op. 22-145 at pp 15, 16 (CIT Dec. 16, 2022).  CBP clearly acted contrary to law by neglecting this obligation.

---

[25] Citing *BLACK'S LAW DICTIONARY* (11th ed. 2019), the court in *Diamond Tools Technology LLC* defined "false" and "omission" as follows:

> "False" is defined as: ""Untrue . . . Deceitful . . . Not genuine; inauthentic . . . **What is false can be so by intent, by accident, or by mistake** . . ." An "omission" is defined as: "A failure to do something; esp., **a neglect of duty** . . . [s]omething that is left out, left undone, or otherwise neglected."

*Diamond Tools*, 545 F. Supp. 3d at 1353 (emphasis added).

If remanded to CBP for a determination as to whether APPI acted in a culpable manner when it imported hardwood plywood from Finewood, it is respectfully submitted the following facts would show that it did not.  First, as discussed above, the record establishes that most of APPI's entries were of hardwood plywood that was not made with Chinese two-ply.  Thus, it was not "covered merchandise" and would not trigger the need for CBP to analyze the entries for material and false statements or act or material omissions.  The material and false statement APPI is accused of making is entering its shipments as "01" entries, rather than "03" entries.  Because entries [761-0088419-6, 761-0088516-9, 761-0088471-7, 221-4038699-0, 761-0088489-9, 761-0088488-1, 761-0088567-2, 761-0088643-1, 761-0088756-1, M85-1804612-2, EAG-4000615-3, 761-0088633-2, 761-0088707-4, M85-1804612-2, 761-0088768-6, 761-0088770-2, 761-0088853-6] did not contain covered merchandise as established by the substantial evidence on the record before CBP, those entries were properly made as "01" entries.  The entries were not made by means of a false and material statement or act, or by a material omission.  The same would be true from APPI entries [11607, 11654, and 11647], if the scope determination is reversed after a final decision in that case.

Second, the record establishes that APPI acted reasonably and without culpability as to all its entries.  The record contains an overview of the vetting steps APPI undertook before contracting with Finewood.  *APPI RFI Response with Exhibits*, PD 72 pt. 1 at PR000349 – 350; CD 32 pt. 1 at BC-000316 – 317.  A manufacturer's questionnaire was provided to Finewood by APPI's agent's lawyer,

who also reviewed the answers. *Id.,* PD 72 pt. 1 at PR000364 – 368; CD 32 pt. 1 at BC-000331 – 335.  APPI's owner visited the Finewood mill in April 2018 and saw Finewood's potential based on his professional experience after years of experience running a foreign plywood mill.  Photos were taken of the mill, and comparisons were drawn to other Vietnamese mills APPI visited contemporaneously.  APPI's owner made a second visit to the Finewood mill in October 2018 to observe Finewood's progress. APPI documented its trip to Finewood's mill with copies of the manufacturer's questionnaire, passport stamps, emails, and photos of the Mill, which were submitted to CBP during this EAPA investigation. *Id.,* PD 72 pt. 1 at PR000366 – 393; CD 32 at BC-000331 - 360.  The record also confirms that APPI, and the other importers, knew that Finewood was augmenting its production with tollers, so Finewood was not trying to keep this fact secret from the importers.[26] *Evasion Determination*, PD136 at PR002469; CD 81 at BC-017133.

The record also contains copies of the Certificates of Origin ("COO") issued by the VCC for each of APPI's shipments. APPI required Finewood to include copies of COOs issued by VCC as support that the minimum amount of value added required to be considered Vietnamese origin was present in the hardwood plywood APPI was purchasing. *Id.,* PD 72 pt. 1 at PR000350; CD 32 pt. 1 at BC-000317.

At least as to APPI, the weight of the record evidence here favors the

---

[26] Not surprisingly, Finewood declined requests by some of the importers for introduction to its tollers.  Those tollers were Finewood's local competition in the hardwood plywood industry, so Finewood's hesitancy to introduce its clients to its competition was a reasonable decision.

importer.  Based on personal inspection of the Finewood mill on two occasions, APPI's experience with plywood mills, its understanding that tollers would be used to support Finewood's production while it ratcheted up its capacity, and the COO statements issued by the VCC, APPI established a reasonable basis to conclude that Finewood was not transshipping finished hardwood plywood from China.

In 2018, when APPI was first ordering hardwood plywood from Finewood, Commerce had yet to issue the scope ruling expanding the scope of the *Orders* to include as covered merchandise Chinese two-ply panels and hardwood plywood made using Chinese two-ply panels.  In 2018, a good faith, plain language reading of the *Orders* limited their scope to "multilayered plywood or other veneered panel, consisting of **two or more layers or plies of wood veneer <u>and</u> a core**." *See, Antidumping Order* at 83 Fed. Reg 512; *Countervailing Order* at 83 Fed. Reg. 515 (emphasis added).  Thus, to a reasonable importer, something with fewer than three layers like Chinese two-ply panels would appear to be outside the scope of the *Orders* as something other than hardwood plywood.[27]

At that time, even Commerce was construing similar language as requiring the presence of at least three plies.  On June 19, 2017, Commerce issued a clarification upon notice and comment on whether two-ply wood products were within the scope of the antidumping and countervailing duty orders on multilayered

---

[27] The *Explanatory Notes to the Harmonized System* ("*ENs*") also reinforce that a reasonable interpretation of the term plywood would not include two-ply panels as a synonym.  The *ENs* for Heading 4412 define plywood as "consisting of three or more sheets of wood glued and pressed one on the other . . .." *ENs* Heading 44.12 at p. 815 (2002 ed.)

wood flooring from China.  *Multilayered Wood Flooring from the People's Republic of China:  Final Clarification of the Scope of the Antidumping and Countervailing Duty Order*, 82 Fed. Reg. 27799 (June 19, 2017).  The scope of those orders contains language similar to the scope of the *Orders* implicated by this EAPA matter: "multilayered wood flooring is composed of an assembly of two or more layers or plies of wood veneer(s) in combination with a core."  *Id.* at 27800.  Commerce acknowledged that historically it had excluded two-layer wood flooring products from those orders because such products failed to consist of at least a minimum of three layers as required by the scope and had issued several scope ruling to that effect. *Id.* at 27799 and ft. nt. 2.  Notwithstanding this well-developed position, Commerce published a modification to the scope in the form of an "interpretative note."  This note made it crystal clear that the scope "refer[s] to wood flooring products with a minimum of three layers."  *Id.* at 27800, ft. nt. 11.

Arguably, in 2018 toll manufacturing of plywood core platforms using Chinese two-ply panels as a raw material would not raise a red flag to a reasonable importer that the finished hardwood plywood was circumventing the *Orders*.  If it were a clear red flag of transshipment in 2018, then why did CBP need to seek clarity on this exact subject and refer the question to Commerce in 2020?

In sum, CBP's finding that APPI entered merchandise by means of a material and false statement or act or material omission without establishing whether APPI acted in a culpable manner is not supported by the facts and law.  APPI was not required by law to seek a scope ruling prior to importing Vietnamese origin

hardwood plywood, *Diamond Tools*, 545 F. Supp. 3d at 1354, and the other

information on the administrative record or publicly published at the time of the

alleged evasion do not support a finding of culpability against APPI.   Thus, CBP's

*Administrative Review* and the *Evasion Determination* it affirmed are arbitrary,

capricious, an abuse of discretion, and otherwise not in accordance with law.


### C. APPI was Deprived Due Process and Fair Access to Information

The Fifth Amendment of the U.S. Constitution prohibits the deprivation of

"life, liberty, or property without due process of law." *U.S. Const., amend V.*  In the

context of an administrative proceeding, due process requires giving the

participants the right to notice and a meaningful opportunity to be heard.

*Cleveland Bd. of Ed. V. Loudermill*, 470 U.S. 532, 542 (1985).

In an EAPA investigation, due process requires that "Customs' procedures . .

. afford adequate opportunity for importers to respond to the evidence used against

them."  *Royal Brush Manufacturing, Inc., v. United States*, 483 F. Supp. 3d 1294,

1306 (CIT 2020).  In that case, the court recognized that an importer participating

in an administrative proceeding, which includes EAPA matters, have the right to

notice and opportunity to be heard.  *Id* at 1305, *citing PSC VSMPO-Avisma Corp. v.

United States*, 688 F.3d 751, 761-62 (Fed. Cir. 2012); *Nereida Trading Co. v. United

States*, 683 F. Supp. 2d 1348, 1355 (CIT 2010) (plaintiff had protected interest in the

assessment of tariffs on goods already imported).  This means that the notice

apprises the importer of the pendency of the matter and provides it an opportunity

to object.  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  It must be done at a meaningful time and in a meaningful manner.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

For the following reasons, by its conduct CBP deprived APPI of its due process rights to be heard and to defend itself.  This conduct was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

1. <u>CBP Failed to Provide Required Public Summaries of Information</u>

Pursuant to 19 C.F.R. § 165.4(e), CBP must include for the benefit of an interested party a public summary of the business confidential information put on an administrative record.  Section 165.4(e) does not require an interested party to request access to a public summary or complain about lack of access to redacted information prior to it being made available.[28] The agency must create it as per the statute.

The record before the Court shows three instances where CBP failed to provide APPI a public summary of a redacted document central to CBP's decision on evasion in this matter.  Prior to APPI bringing this law suit, the CBP had not provided APPI with the redacted information from the *Attaché Report* (PD 31 at PR000085 – 088; CD 10 at BC-000020 - 023), the *Notice of Initiation* (PD 38 at PR 000102 – 108; CD 17 at BC-000037 - 043) or the *Verification Report* (PD 120 at PR002233 – 252; CD 70 at BC-016919 - 938), nor has it provided APPI with a public

---

[28] APPI complained to CBP on August 9, about not being privy to the information used by TRLED to compile the *Verification Report*.  PD 121 at PR002254 – 255.

summary of those documents.  CBP relied on each of these documents to support its findings and conclusions when it: 1) initiated the formal investigation, 2) reached its determination of evasion; and 3) conducted its *de novo* administrative review.

The CIT held that CBP's failure to provide a public summary of business confidential information to an importer in an EAPA case violated due process requirements.  In *Royal Brush*, the Court remanded the matter when it found that CBP had not complied with this regulation, instructing CBP "to comply with the public summary requirements set forth in 19 C.F.R. § 165.4, and afford Royal Brush an opportunity to present arguments based on that information."  *Royal Brush*, 483 F. Supp. 3d at 1307.

By failing to provide APPI with public summaries of these three key documents, CBP violated not just its regulations requiring the dissemination of a public summary, but it denied APPI its basic due process rights to understand the nature of the allegations against it and to respond to the findings associated with the *Attaché Report*, the *Notice of Initiation*, and the *Verification Report*.  The record contains no indication that this information was not susceptible to public summarization.

2.  <u>APPI Was Denied Due Process When CBP Imposed Interim Measure</u>

APPI was deprived its due process rights when CBP imposed interim measures against APPI without first providing it notice and the opportunity to heard.  These interim measures, among others, rate advanced APPI's entries of already-imported but unliquidated entries of hardwood plywood to include 206%

47

antidumping and countervailing duties.

When considering due process issues, a reviewing court starts by determining whether a protected property right or liberty interest exists. If one is found, then the court's next step is to determine the necessary procedures for safeguarding that protected interest. *Nereida Trading Co. v. United States*, 683 F. Supp. 2d 1348, 1355 (CIT 2010).

The CIT has recognized that importers have a personal property right for goods already imported. For example, in *Transcom, Inc. v. United States,* 121 F. Supp. 2d 690 (CIT 2000), the court found such a right attached to merchandise imported into the U.S. The court noted that "[i]t is impossible to comprehend how an importer's lack of a vested right to import merchandise in the future negates the obligation to provide the importer with notice prior to imposing an antidumping duty for the merchandise it already imported." *Id.* at 708. Similarly, in *Nereida Trading Co. v. United States*, 683 F. Supp. 2d 1348 (CIT 2010), the court assumed for purposes of that decision that the plaintiff had a protected property issue in goods already imported. *Id.* at 1355.

In APPI's case, each of its entries at issue in this EAPA matter was entered into the United States before TRLED announced the imposition of interim measures on November 20, 2018. Once imported, those entries of hardwood plywood were no longer future imports to which no property rights attached to the importer. This situation falls squarely within the reasoning of *Transcom* and *Nereida*, as entered goods create a property interest in the importer, which in turn

48

triggers Customs' obligation to provide due process before it assesses additional duties.

In *Diamond Tools Tech. LLC v. United States*, the plaintiff argued that its due process rights were deprived because it received no notice or opportunity to be heard prior to CBP imposing interim measures against it in an EAPA case. *Diamond Tools*, 545 F. Supp. 3d at 1341. The court distinguished *Transcom* and *Nereida* by finding the agency action in those cases resulted in action that could not be undone by the agency, creating a protected property interest in favor of the importer. In *Nereida,* a subsequent liquidation deprived the importer the opportunity to challenge the agency's assessment of double duties for failing to file a non-reimbursement certificate. In *Transcom*, the importer had no notice prior to a final Commerce determination.

The *Diamond Tools* court, however, concluded that interim measures are temporary and self-executing. *Id*. at 1341. If no evasion is found, then the measures are lifted, and any cash deposits paid refunded, with interest. While acknowledging a possibility exists that a protected interest could occur in this context, the court concluded that the importer had failed to establish such interest in that case.

The current EAPA case profiles differently in one critical feature. On March 11, 2000, and March 19, 2020, Commerce issued administrative messages 0071409 and 0079402 instructing CBP to liquidate entries of Finewood shipments of hardwood plywood at the 206% cash deposit rate, notwithstanding that some of those entries were ordered suspended as part of the interim measures in this EAPA

case. Thereafter, CBP started liquidating APPI's suspended entries and issuing to it duty bills for antidumping and countervailing duties.[29]

Therefore, the rational used in *Diamond Tools* to support its finding of no protected property interest is no longer true in this case.  If APPI and the other importers are successful in having the underlying administrative EAPA decisions reversed, then APPI still must continue contesting those premature liquidations outside the EAPA procedural structure for a significant number of its entries, [30] as those liquidated entries will not automatically revert to their pre-interim measures status when the interim measures are lifted.  APPI situation is no different than the circumstances against which the *Nereida* and *Transcom* courts set out to protect against. APPI imported goods; the duty accessed on those goods was changed after importation to the detriment of the importer, and the agency took action to finalize those increases (in this case via liquidation) without giving the importer notice and an opportunity to be heard on the underlying agency action. Clearly, now APPI has a protected property interest in its entries and the amount of duty being assessed against them after importation.

---

[29] Between March 31, 2020, and April 7, 2020 APPI's counsel and CBP exchanged emails documenting that APPI had called this issue to the attention of TRLED and requested that CBP void these improper liquidations.  The administrative record in this case, however, was filed without these emails, notwithstanding that such communications related to this ongoing EAPA matter and should make up part of its administrative record.

[30] After being advised by both CBP and Commerce that the agencies could not undo the illegal liquidations, APPI was forced to protest these entries.  Its protest is still pending.

Because a property interest attached to its already entered importations, APPI was entitled to notice and an opportunity to be heard before CBP implemented the interim measures.  Because it was denied both notice and the opportunity to be heard before CBP imposed punitive antidumping and countervailing duties on already imported merchandise, APPI was deprived of its due process rights.

## V.    CONCLUSIONS

For the reasons stated herein, judgment should be entered in favor of APPI and the other importers and against defendant.  The Court should hold that defendant's determinations that APPI imported "covered" merchandise by means of "material and false" statements or "material omissions," thus avoiding payment of antidumping and countervailing duties through "evasion," were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Furthermore, this Court should enter judgment holding that CBP's actions denied procedural due process protection owed to APPI.  The matter should be remanded to the agency for further action consistent with the Court's decision.

Respectfully submitted,

/s/Frederic D. Van Arnam, Jr.

Frederic D. Van Arnam, Jr.
Ashley J. Bodden
**BARNES, RICHARDSON & COLBURN, LLP**
100 William Street, Suite 305
New York, NY 10038
Tel.: (212) 725-0200, ext. 126
Fax: (212) 889-4135
Email:  rvanarnam@barnesrichardson.com
*Counsel for American Pacific Plywood, Inc.*

Dated:  January 13, 2023
New York, NY

Word Count Certificate of Compliance

Pursuant to the U.S. Court of International Trade's Standard Chambers Procedures 2(B)(1) and this Court's Scheduling Order of October 7, 2022, the undersigned certifies that this brief complies with the word limitation requirement. The word count for Consolidate Plaintiff American Pacific Plywood Inc's Memorandum in Support of it Motion for Judgment on the Agency Record, as computed by the word count feature in the word processing system used to prepare this brief, (Microsoft® Word for Microsoft 365 MSO, version 2211) is 13,620 words.

<u>/s/Frederic D. Van Arnam, Jr.</u>

Frederic D. Van Arnam, Jr.
**BARNES, RICHARDSON & COLBURN, LLP**
100 William Street, Suite 305
New York, NY 10038
Tel.: (212) 725-0200, ext. 126
Fax: (212) 889-4135
Email: rvanarnam@barnesrichardson.com
*Counsel for American Pacific Plywood, Inc.*