# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| FAR EAST AMERICAN, INC., AND LIBERTY WOODS INTERNATIONAL, INC. | ) ) ) ) | |
| PLAINTIFFS, | ) ) | Case No. 1:22-cv-00240 |
| AMERICAN PACIFIC PLYWOOD, INC., INTERGLOBAL FOREST, LLC, | ) ) ) | (Consolidated w/ Case No. 1:22-cv-00213) |
| CONSOLIDATED PLAINTIFFS | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| DEFENDANT. | ) ) | |

## ORDER

Upon consideration of Consolidated Plaintiff Interglobal Forest LLC's Rule 56.2 Motion for Judgment Upon the Administrative Record, and all other papers and proceedings had herein, it is hereby

ORDERED that said motion is GRANTED, and it is further

ORDERED that

(a) the investigations under the Enforce and Protect Act ("EAPA") investigations Nos. 7252, 7253, 7254, 7255, and 7256 (consolidated as EAPA Inv. No. 7252) prompted by Plywood Source LLC (the "Petitioner") with respect to any reported injury allegedly sustained by U.S. plywood manufacturers did not purport to encompass any claims relating to or arising from the types of two-ply panels which Vietnam Finewood Company Limited ("Finewood") imported from China and used as a partial source of raw material in connection with Finewood's manufacturing a portion of the plywood which Finewood sold to U.S. importers;

(b) the "Covered Merchandise" (as defined in accordance with 19 U.S.C. § 1517(a)(3)) does not encompass (i) the two-ply panels which Finewood substantially transformed into plywood or (ii) the plywood which incorporates those two-ply panels;

(c) Commerce and CBP's substantial transformation analysis was arbitrary, capricious, and unsupported by substantial evidence;

(d) Commerce and CBP shall withdraw the January 28, 2022, affirmative final determination issued by CBP's Trade Remedy & Law Enforcement Directorate ("TRLED"), which purported to find evasion (the "Evasion Determination"), under the EAPA in EAPA Consolidated Investigation No. 7252;

(e) Commerce and CBP shall withdraw the June 6, 2022, decision issued by CBP's Office of Regulations and Rulings ("OR&R") in administrative appeal number H323923 (the "Appeal Determination") affirming the Evasion Determination;

(f) Commerce and CBP shall withdraw the supplemental determination affirming the Evasion Determination by OR&R on July 6, 2022 in administrative appeal number H325765 (the "Supplemental Determination");

(g) Commerce shall withdraw its Final Scope Ruling in EAPA Consolidated Investigation No. 7252;

(h) this matter is remanded to Commerce and CBP with instructions to terminate EAPA Consolidated Investigation No. 7252 and order the liquidation of Consolidated Plaintiff InterGlobal Forest LLC's unliquidated entries without the addition of antidumping and countervailing duties and to grant in full Consolidated Plaintiff InterGlobal Forest LLC's administrative Protest No. 460120120036 contesting CBP's unlawful premature liquidation of Consolidated Plaintiff InterGlobal Forest LLC's entries;

(i)  Commerce and CBP shall immediately revoke, and thereafter cease and desist from, any other enforcement measures on the hardwood plywood Consolidated Plaintiff InterGlobal Forest LLC imported and entered from Finewood which did not contain two-ply panels.


DATED: _____                          _____
       New York, New York                                       Mark A. Barnett

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |  |
|---|---|---|
| FAR EAST AMERICAN, INC., AND LIBERTY WOODS INTERNATIONAL, INC. | ) ) ) ) | |
| PLAINTIFFS, | ) ) | Case No. 1:22-cv-00240 |
| AMERICAN PACIFIC PLYWOOD, INC., INTERGLOBAL FOREST, LLC, | ) ) ) | (Consolidated w/ Case No. 1:22-cv-00213) |
| CONSOLIDATED PLAINTIFFS | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| DEFENDANT. | ) ) ) | |

## CONSOLIDATED PLAINTIFF'S MOTION FOR JUDGMENT

## ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Consolidated Plaintiff InterGlobal Forest, LLC respectfully moves this Court for an order granting movants judgment on the agency record against Defendant, the United States (representing the U.S. Department of Commerce ("Commerce") and U.S. Customs and Border Protection ("CBP")), including, but not limited to the following relief:

(a) Finding that the investigations under the Enforce and Protect Act ("EAPA") investigations Nos. 7252, 7253, 7254, 7255, and 7256 (consolidated as EAPA Inv. No. 7252) prompted by Plywood Source LLC (the "Petitioner") with respect to any reported injury allegedly sustained by U.S. plywood manufacturers did not purport to encompass any claims relating to or arising from the types of two-ply panels which Vietnam Finewood Company Limited

("Finewood") imported from China and used as a partial source of raw material in connection with Finewood's manufacturing a portion of the plywood which Finewood sold to U.S. importers;

(b) For purposes of these proceedings, the "Covered Merchandise" (as defined in accordance with 19 U.S.C. § 1517(a)(3)) does not encompass (i) the two-ply panels which Finewood substantially transformed into plywood or (ii) the plywood which incorporates those two-ply panels;

(c) Finding that Commerce and CBP's substantial transformation analysis was arbitrary, capricious, and unsupported by substantial evidence;

(d) Ordering Commerce and CBP to withdraw the January 28, 2022, affirmative final determination issued by CBP's Trade Remedy & Law Enforcement Directorate ("TRLED"), which purported to find evasion (the "Evasion Determination"), under the EAPA in EAPA Consolidated Investigation No. 7252;

(e) Ordering Commerce and CBP to withdraw the June 6, 2022, decision issued by CBP's Office of Regulations and Rulings ("OR&R") in administrative appeal number H323923 (the "Appeal Determination") affirming the Evasion Determination;

(f) Ordering Commerce and CBP to withdraw the supplemental determination affirming the Evasion Determination by OR&R on July 6, 2022 in administrative appeal number H325765 (the "Supplemental Determination");

(g) Ordering Commerce to withdraw its Final Scope Ruling in EAPA Consolidated Investigation No. 7252;

(h) Remanding this matter to Commerce and CBP with instructions to terminate EAPA Consolidated Investigation No. 7252 and order the liquidation of Consolidated Plaintiff InterGlobal Forest LLC's unliquidated entries without the addition of antidumping and countervailing duties and to grant in full Consolidated Plaintiff InterGlobal Forest LLC's administrative Protest No. 460120120036 contesting CBP's unlawful premature liquidation of Consolidated Plaintiff InterGlobal Forest LLC's entries;

(i) Ordering Commerce and CBP to immediately revoke, and thereafter cease and desist from, any other enforcement measures on the hardwood plywood Consolidated Plaintiff InterGlobal Forest LLC imported and entered from Finewood which did not contain two-ply panels; and

(j) Granting Consolidated Plaintiff such other relief as is appropriate.

A memorandum of points and authorities in support of this motion is being filed contemporaneously with this motion.

WHEREFORE, for the reasons described in this Motion and the memorandum, Consolidated Plaintiff respectfully requests that this Court enter judgment in its favor. A proposed order is attached for the Court's consideration.

Dated: January 13, 2023            Respectfully submitted,

/s/ Ignacio J. Lazo

Ignacio J. Lazo
Cadden & Fuller LLP
2050 Main Street, Suite 260
Irvine, CA 92614
Telephone: (949) 788-0827
Facsimile: (949) 450-6550
E-mail:ilazo@caddenfuller.com
Counsel for Consolidated Plaintiff,
InterGlobal Forest LLC

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| FAR EAST AMERICAN, INC., AND LIBERTY WOODS INTERNATIONAL, INC. | ) ) ) | |
| | ) | **PUBLIC** |
| PLAINTIFFS, | ) ) | Case No. 1:22-cv-00240 |
| AMERICAN PACIFIC PLYWOOD, INC., INTERGLOBAL FOREST, LLC, | ) ) ) | (Consolidated w/ Case No. 1:22-cv-00213) |
| CONSOLIDATED PLAINTIFFS | ) ) | **Business Proprietary Information has been** |
| v. | ) ) | **Deleted from Pages 4, 10, 20, 21, 22, 24, 25, 28, 30** |
| UNITED STATES, | ) ) | |
| DEFENDANT. | ) ) | |

## CONSOLIDATED PLAINTIFF INTERGLOBAL FOREST, LLC RULE 56.2

## MEMORANDUM IN SUPPORT OF MOTION FOR

## <u>JUDGMENT UPON THE AGENCY RECORD</u>

Thomas H. Cadden
Ignacio J. Lazo
Cadden & Fuller LLP
2050 Main Street, Suite 260
Irvine, CA 92614
Tel: (949) 416-0245
Email:  tcadden@caddenfuller.com
Counsel to Consolidated Plaintiff,
Interglobal Forest LLC

Dated: January 13, 2023

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

    A.    Identification Of The Parties And The Initial Proceedings .................................... 1

    B.    Procedural History And Facts Of The Case……………….…………….…..………1

    C.    The Investigation Was Not Predicated On Sufficient Evidence That IGF
          Violated The Orders…………………………………………………………………7

    D.    IGF and Finewood Cooperated Fully With the EAPA Investigation…………….9

II.    STATEMENT OF THE CASE……………………………………………………….11

    A.    The Scope Of The Initial Orders Clearly Excluded Any Type Of Panel Which
          Did Not Consist Of At Least Two Plies And A Core…………………………..11

III.    RULE 56.2 STATEMENT…………………………………………………………12

    A.    Administrative Determinations Subject to Appeal………………………………12

    B.    Issues Presented……………………………………………………………........13

IV.    STANDARD OF REVIEW………………………………………….………......13

    A.    Arbitrary and Capricious Standard ..................................................................... 14

    B.    Substantial Evidence ........................................................................................... 14

V.    SUMMARY OF ARGUMENTS ........................................................................ 15

VI.    ARGUMENT…………………………………………………………………………16

    A.    The Alleger Is Not a Credible Source of Information .......................................... 16

    B.    Finewood Toll-Manufactured Plywood Cores to Increase its Capacity .............. 17

C.      IGF Did Not Participate In An Alleged Transshipment Scheme to Evade Applicable Duties As It Took Beyond Reasonable Steps to Verify Finewood's Production…………………………………………………………….…………21

D.      Finewood Submitted Production Records for All Sales…………………..……..22

E.      Finewood Submitted All Records of Purchased Materials and Input…… ……..23

F.      IGF Exercised Due Diligence in its Business Relations with Finewood……………….…………….…………….……………24

G.      Finewood's Records Show That It Did Not Use Two-Ply for All Finished Plywood Products. ……………….…………….…………….…………….……………27

H.      Notwithstanding Commerce's Scope Determination, the Record Evidence is Clear that Finewood Did Not Source "Hardwood Plywood" from China ……………..28

      1.  TRLED Did Not Understand Commerce's Scope Ruling on Two-Ply…….28

      2.  TRLED's Conclusions Regarding Record Evidence Lack Merit……..……29

I.      Additional Comments on Attache Report………………………………….30

J.      CBP Has Not Observed Minimum Requirements of Due Process in its Conduct of EAPA Inv. 7252……………………………………………….……………..32

VII.  CONCLUSION ……………….…………………………………………...……………35

# TABLE OF AUTHORITIES

**CASES**

1.  *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474,484 (2006) ........................33

2.  *A. L. Patterson, Inc. v. United States*, 585 F. App'x 778, 781-82 (Fed. Cir. 2014) .......15

3.  *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004) ....................................14

4.  *Bomont Industries v. United States*, 718 F. Supp. 958, 964 (Ct. Int'l Trade 1989). ...... 17

5.  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974)....14

6.  *Chemical Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012)..........14

7.  *Consol. Edison Co. of NY. v. NLRB*, 305 U.S. 197,229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) ...................................................................................................................15

8.  *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1375-1381 (Fed. Cir. 2016) .....14

9.  *Dickinson v. Zurko*, 527 U.S. 150, 162, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) .......15

10. *Diamond Tools Tech. LLC*, 2021 Ct. Intl. Trade LEXIS 155 at 70-72) ……………...…27

11. *FTC v. Standard Oil Co.*, 449 U.S. 232, 245 (1980). …………………………………....12

12. *In Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350-52 (D.C. Cir. 2014)……………..14

13. *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) ……………..15

14. *Huvis Corp. v. United States*, 570 F.3d 1347, 1351 (Fed. Cir. 2009 ...............................15

15. *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-172 (1951) ........34

16. *Londoner v. City and County of Denver*, 210 U.S. 373 (1908) ......................................34

17. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ..14

18. *Peer Bearing Co. Changshan v. United States*, 884 F. Supp. 2d 1313, 1324 (Ct. Int'l Trade 2012). ……………………………………………………………………………………29

19. *USX Corp. v. United States*, 11 C.I.T. 82, 84 (1987).......................................................15

20. *Pension Benefit Guar. Corp. v. The LTV Corp., Inc.,* 496 U.S. 633, 655, 110 S. Ct. 2668, 110 L. Ed. 2d 579 (1990)………………………………………………………………...33

**REGULATIONS**

1. 5 U.S.C. §555.................................................................................................... 33
2. 19 C.F.R. § 165.1…………………………………………………………….7, 27
3. 19 C.F.R. § 165.26(a) …………………………………………………...…….1, 27
4. 19 C.F.R. § 165.41……………………………………………………….……….1
5. 19 C.F.R. § 165.27(a) …………………………………………………………...8
6. 19 U.S.C. §1517(a)(3) ...............................................................................1
7. 19 U.S.C. §1517(a)(5)(A) ……………………………………………………27
8. 19 U.S.C. § 1517(b)(1)…………………………….…………………………8, 35
9. 19 U.S.C. § 1517(b)(4)...……………………………………………………….4
10. 19 U.S.C. § 1517(c)(4)...…………………………………………………….…4
11. 19 U.S.C. § 1517(f)…………………………………………………….……….1
12. 19 U.S.C. §1517(g)(2) ……………………………………………….…… 13

**ADMINISTRATIVE DECISIONS**

1. Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018).............................................................7

2. Certain Hardwood Plywood Products from the People's Republic of China, Countervailing Duty Order, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018)......................................................................................1, 7

PUBLIC VERSION

# TABLE OF ADMINISTRATIVE RECORD CITATIONS

DOCUMENT                                                                    Page

TRLED – Notice of Determination as to Evasion ("Evasion Determination)

CD 81 .................................................................................. 1, 2, 6, 7, 17, 18, 20, 21, 28, 30, 31

RAAAS -VN Finewood On-Site Verification Report ("Verification Report" or "VR")

CD 70 ........................................................................... 4, 9, 10, 20, 21, 24, 25, 29, 31

TRLED – Notice of Investigation and Interim Measures ("NOI")

CD 17 ................................................................................................................. 2, 23, 33

CBP Attaché – VN Finewood Site Visit Report ("Attaché Report")

CD 10 ................................................................................. 3, 9, 20, 23, 32, 33, 34

Dep't Commerce – Transmittal Letter and Final Scope Ruling Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from The People's Republic of China ("Commerce Scope Ruling")

CD 79 .................................................................................................... 6, 30, 31

VN Finewood – 5th Supplemental RFI Response with Exhibits (Finewood 5th "SQR")

CD 68-69 ................................................................................... 19, 21, 25-26, 31

VN Finewood – 4th Supplemental RFI Response with Exhibits (Finewood 4th "SQR")

CD 66 ................................................................................................. 19, 24, 25-26

VN Finewood – 2nd Supplemental RFI Response with Exhibits (Finewood 2nd "SQR")

CD 56 ................................................................................................................ 24, 29

VN Finewood – 1st Supplemental RFI Response with Exhibits (Finewood 1st "SQR")

CD 53 ................................................................................... 19, 21, 24, 25-26, 29

VN Finewood –Questionnaire Response with Exhibits

CD 51................................................................................... 19, 22, 23, 24, 51

VN Finewood - Exhibit 9: Domestically Sourced Materials
CD 50................................................................................................................ 25

VN Finewood - Exhibit 6: Production and Export Data
CD 48................................................................................................................ 23

VN Finewood - Exhibit 5: Machine Records
CD 47................................................................................................... 22, 23, 33

VN Finewood - Exhibit 1: Sales Documents
CD 44.................................................................................... ......... ......... ......... .......29

IGF - Supplemental RFI Response with Exhibits
CD 61 .............................................................................. ..................................... 10

IGF - RFI Questionnaire Response and Exhibits 1-16 (Parts 1-6) and Exhibits 6-7
CD 39-41 ............................................................................ 6, 10, 11, 19, 29

IGF - Supplemental RFI Response with Exhibits
CD 61.................................................................................................................. 6
VN Finewood - Written Arguments
CD 74.................................................................................................................. 7

Far East - Voluntary Submission of Factual Information
CD 54.................................................................................................................17, 18

Far East - Questionnaire Response with Exhibits
CD 37.................................................... ......... ......... ......... ......... ......... ......... ......... …26

Far East - RFI Response with Exhibits
CD 31.................................................... ......... ......... ......... ......... ......... ......... .........................27

## I.  INTRODUCTION

This Motion for Judgment on the Administrative Record (this "Motion") is filed on behalf of Consolidated Plaintiff InterGlobal Forest ("IGF"), a U.S. importer of hardwood plywood, based upon Trade Remedy Law Enforcement Directorate's (TRLED)  Verification Report ("VR") and its determination as to evasion in EAPA Inv. 7252 pursuant to 19 U.S.C. § 1517(f) and 19 CFR § 165.41.  *See*, TRLED, Notice of Determination as to Evasion (Jan. 28, 2022) ("TRLED Det.").  IGF also hereby incorporates into this Motion the arguments set forth in the Motions for Judgment on the Administrative Record submitted by American Pacific Plywood, Inc. ("APPI"), Liberty Woods International, Inc. ("LWI"), Far East American, Inc. ("FEA"), and Vietnam Finewood Limited ("Finewood") and other facts they have submitted on the administrative record that are relevant to the determination.  *See* 19 C.F.R. § 165.26(a).

### A.  Identification Of The Parties And The Initial Proceedings.

Consolidated Plaintiff InterGlobal Forest, LLC. ("IGF") or ("Plaintiff") is a U.S. importer of hardwood plywood manufactured by Vietnam Finewood Company Limited ("Finewood"). Finewood is a privately held company organized under the laws of Vietnam.  Finewood produces hardwood plywood in Vietnam and exports such hardwood plywood to the United States. American Pacific Plywood, Inc. ("APPI"), Liberty Woods International, Inc. ("LWI"), and Far East American, Inc. ("FEA") are other U.S. importers of hardwood plywood manufactured by Finewood in Vietnam.

On January 4, 2018, the U.S. Department of Commerce ("Commerce") imposed an antidumping duty ("AD") order and a countervailing duty ("CVD") order on U.S. imports of Chinese hardwood.  *See, Certain Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 504 (January 4, 2018) (the "AD Order"); *see also Certain Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 513 (January 4, 2018) (the "CVD Order") (collectively, the "Orders").  The merchandise that is subject to the Orders is referred to herein as "Covered Merchandise."  *See* 19 U.S.C. §1517(a)(3).

**B. Procedural History And Facts Of The Case.**

On July 9, 2018, Plywood Source LLC ("Alleger") submitted to CBP allegations that IGF and four other U.S. importers were evading the antidumping and countervailing orders on hardwood plywood from China by transshipping Chinese hardwood plywood through Vietnam for import into the United States. See TRLED Det. at 2, note 6. The Alleger is itself a U.S. importer of hardwood plywood from Vietnam.

On July 25, 2018, TRLED acknowledged receipt of the evasion allegations to the Alleger, and on August 15, 2018, TRLED initiated EAPA investigations 7252, 7253, 7254, 7255, and 7256 against IGF and the other four U.S. importers. TRLED Det. at 2. For the next three months, TRLED conducted a secret investigation against IGF. On November 20, 2018, TRLED informed IGF and the other importers that during its secret investigation, TRLED had developed a record giving rise to a "reasonable suspicion" of evasion of the Orders by IGF and consolidating EAPA investigations 7253, 7254, 7255, and 7256 with EAPA Inv. 7252. *See,* TRLED, EAPA Cons. Case No. 7252: Notice of Initiation of Investigation and Interim Measures at 2, PD 38 at PR000103; CD 17 at BC 000038 ("NOI"). As a result, TRLED imposed interim measures against IGF by suspending liquidation of IGF's entries of hardwood plywood from Vietnam entered on or after August 15, 2018, rate-adjusting these entries as subject to the Orders, requiring cash deposits and live entries for future imports, and extending the period for liquidation of all unliquidated entries that entered before August 15, 2018. NOI at 6.

CBP based its "reasonable suspicion" on undisclosed materials that the Alleger submitted without providing IGF or its legal counsel access to any information CBP or the Alleger claimed to be confidential. In particular, CBP offered IGF no opportunity to comment on and rebut alleged Vietnamese import data and videos from an unknown source, which the Alleger submitted and for which the Alleger provided its own biased interpretation. In addition, the allegations regarding Finewood's production capacity upon which CBP relied are Alleger's own, unverified, estimates to which CBP offered IGF or Finewood no opportunity to rebut before imposing interim measures.

On October 24, 2018, CBP officers along with agents from U.S. Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) visited Finewood's plant in Vietnam without prior notice, and further scheduled an appointment to observe Finewood's production operation on the following day. See generally, CBP Interoffice Memorandum (October 29, 2018) ("Attaché Report" or "AR") (October 29, 2018) PD 31 at PR000085 – 088; CD 10 at BC-000020 – 023.

On October 25, 2018, three persons, two from the above agencies, one of which served as an English-Vietnamese and Vietnamese-English translator, visited the plant. *See,* Attaché Report at 2. Given that there was essentially no notice of this visit, Finewood was unable to retain counsel or even arrange to have its own trained translator attend the visit. *See, id.* (where the report indicated that one of the Vietnamese staff of Finewood would have to serve as translator for spoken Chinese). Finewood reports that there were significant misunderstandings and incomplete translations of its communications. Suffice it to say that there was no neutral or Finewood observer to confirm or contest CBP's observations in the report in real time.

To date, no party has placed any evidence on the record to establish the expertise underlying the statements in that first report with respect to the capacity of the machinery that the officials saw in their short walk through the factory or their expertise in evaluating the raw materials they inspected. Further, CBP's officials inspected no documentary records during that visit.

Rather, they stated that " {a}n audit is recommended to obtain the necessary documents and verify VF's purchases of imported products and plywood production capabilities." Attaché Report at 4. Thus, CBP officials made no definitive conclusions in their site visit report as to Finewood's imported raw materials and production capacity. IGF notes further that CBP's agents recommended an "audit" to clarify Finewood's production processes and production capacity, not an EAPA investigation. That audit, with all its regulatory protections, never took place.

Between November 20, 2018 and May 3, 2019, the importers responded to initial and supplemental questionnaires from CBP, and Finewood responded to six CBP requests for information. On May 16-1 7, 2019, as part of the EAPA investigation, several CBP officers visited Finewood in Vietnam to verify Finewood's and the U.S. Importers' voluminous responses to CBP's requests for information. Finewood's legal counsel was present at this CBP verification.

The CBP officers closely observed the entire production process from veneer to finished plywood. They also inspected and verified two-ply veneer that was the foundational evidence underlying the evasion allegation, and its original [          ]. *See,* U.S. Customs and Border Protection Office of Trade On-Site Verification Report EAPA Cons. Case No. 7252 (July 24, 2019) ("Verification Report" or "VR"). CBP's verification team confirmed that Finewood imported two-ply from China, not finished plywood. *Id.* at 7. The team also found no discrepancies in original production and sales documents to those that Finewood provided in response to CBP's questionnaires. *Id.* at 9.

On August 9, 2019, the importers and Finewood submitted case briefs to CBP, noting that Finewood had submitted all of its production and sales records related to the sales to the five importers under investigation. As noted above, CBP successfully verified the completeness and accuracy of these records on-site at Finewood's manufacturing plant in Vietnam. IGF and Finewood therefore maintained that the Alleger had not met its burden to provide substantial evidence of a transshipment of Chinese plywood covered by the scope of the Orders; nor had CBP developed substantial evidence of transshipment or evasion of those orders. Accordingly, Finewood and its importers submitted that CBP should issue a negative final finding in this evasion investigation.

CBP's final determination in EAPA Inv. 7252 was due on September 16, 2019. CBP must notify parties to the proceeding of its final decision within five business days, in this case, by September 23, 2109. *See,* 19 U.S.C. § 1517(c)(4). Instead, Finewood received an email notice from CBP on September 25, 2019 that, pursuant to EAPA regulation 19 CFR §165.16, CBP had

referred the matter to Commerce for a scope determination. *See also*, 19 U.S.C. § 1517(b)(4). CBP's email dated September 25, 2019 did not provide the scope referral itself nor any information on the nature of the scope referral.

Only on November 1, 2019 did Finewood finally receive an undated copy of CBP's scope referral that summarized the issue that CBP referred to Commerce. The scope referral included no addressee and otherwise appeared to be in draft form.

On January 13, 2020, after commencement of litigation challenging CBP's untimely scope referral, the U.S. Department of Commerce ("Commerce") initiated a scope inquiry, allegedly based on CBP's scope referral although Commerce indicated in its initiation notice that the scope inquiry was "self-initiated." *See,* Dep't Commerce, Certain Hardwood Plywood From the People 's Republic of China: Notice of Covered Merchandise Referral and Initiation of Scope Inquiry, 85 Fed. Reg. 3024 (Jan. 17, 2020) ("DOC Notice").

On January 21, 2020, Commerce made available to the public under cover of a memorandum concerning "Placement of Covered Merchandise Referral Documents on the Record" a second version of CBP's November 1, 2019 scope referral, including a date in the heading of the document, September 16, 2019, an addressee, and revisions to the referral. *See,* Dep't Commerce, U.S. Customs and Border Protection Enforce and Protect Act Investigation No. 7252, Certain Hardwood Plywood Products from the People's Republic of China (A-570-051 and C-570-052) re: Placement of Covered Merchandise Referral Documents on the Record (Jan. 21 , 2020) at Attachment.

The version of the scope referral found on CBP's website is dated August 23, 2019. *See,* https://www.cbp.gov/sites/default/files/assets/documents/2020-Jan/Scope%20Referral%20Request%20for%20Merchandise%20under%20EAP A %20Cons.%20Investigation%207252.pdf (last accessed February 27, 2022). To date, no CBP official has explained the discrepancies in dates and text of the three versions of CBP's scope referral.

Commerce issued its final scope ruling on two-ply on January 21, 2022 (almost exactly two years after its initiation) and transmitted its results to CBP on January 27, 2022. *See,* Dep't Commerce, Covered Merchandise Referral Regarding EAPA Investigation No. 7252 (Jan. 27, 2022) ("Commerce Scope Ruling") CD 79. Commerce found that two-ply is a type of "certain veneered panel" covered by the scope of the Orders. Commerce determined further that two-ply was not substantially transformed by Finewood's manufacture of finished hardwood plywood in Vietnam. Id.; see also TRLED Det. at 5.

On February 18, 2022, Finewood, FEA, and LWI filed a summons and complaint with the U.S. Court of International Trade challenging Commerce's scope determination. FEA and LWI therefore requested that CBP stay further proceedings in EAPA Inv. 7252 during the pendency of the related litigation in Vietnam Finewood Company Limited, et. al v. United States, U.S. Court of International Trade ("CIT") Ct. No. 22-00049 and Plaintiff's action, *Interglobal Forest LLC v. United States*, CIT Ct. No. 22-00053. Despite the ongoing litigation concerning the issue of scope central to the EAPA 7252 investigation, CBP denied the parties' request for a stay. *See,* Email from Brian M. Hoxie, TRLED re: Request for Stay of Administrative Proceedings (Feb. 25, 2022).

During the investigation, IGF responded to two Requests for Information ("RFI") issued by TRLED in this investigation. IGF's initial RFI response consists of 2,992 pages of narrative response and commercial documents. *See,* IGF Response to RFI (March 6, 2019). IGF's supplemental RFI consisted of a 19-page response and additional documents. *See* IGF Response to Supplemental RFI (April 17, 2019). IGF cooperated fully with TRLED, detailing and documenting all of its strenuous efforts to vet its foreign producer, *i.e.*, VN Finewood, to ensure that it had the production capacity to fulfill IGF's plywood orders with production in Vietnam prior to placing any sales orders.

In its determination of evasion, TRLED found that Finewood lacked the production capacity to produce the plywood it exported to the United States, citing as support (i) the Alleger's claim; (ii) the fact that Finewood had Vietnamese tollers complete core platforms (in Vietnam);

and (iii) the fact that Finewood sourced veneer from China.  TRLED Det. at 5-6, 7. TRLED also appears to believe that Finewood's sourcing of two-ply veneer from China is the same as sourcing finished hardwood plywood from China and reselling it to the United States. *Id.* at 7.

Record evidence does not support the finding that IGF's hardwood plywood imported from Finewood is covered merchandise under the Antidumping Order, A-570-051, and Countervailing Duty Order, C-570-052 of Hardwood Plywood from China.  IGF further submits that, in any event, CBP should have found that IGF did not participate in any transshipment or 1 *Certain Hardwood Plywood from the People's Republic of China: Antidumping Order* , 83 Fed.  Reg 504 (Dept. Commerce, Jan. 4, 2018) ("Antidumping Order");  Certain Hardwood Plywood  from the People's Republic of China: Countervailing Duty Order , 83 Fed. Reg. 513 (Dept.  Commerce, Jan. 4, 2018) ("Countervailing Duty Order") evasion of the China Hardwood Plywood orders because IGF exercised due diligence in verifying that Finewood was producing hardwood plywood in Vietnam. Thus, IGF at no point made a false material statement to CBP with respect to these imports. Accordingly, IGF submits that TRLED should have issued a negative final finding with respect to IGF in the consolidated investigation.

IGF incorporates and supports Finewood's submission that substantial evidence on  the record unequivocally established that Finewood's shipments were not covered  merchandise. See, Finewood Written Arguments (August 9, 2019) and any documents filed in this matter today. Moreover, the Statute and regulation define "evasion" as "entering covered merchandise into United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material. . . ." 19 U.S.C. §  1517(a)(5)(A); 19 C.F.R. § 165.1.

### C.  The Investigation Was Not Predicated On Sufficient Evidence That IGF Violated The Orders

This investigation started with an allegation filed by Plywood Source, LLC ("Plywood Source") on July 9, 2018 alleging that several importers, including IGF, had imported covered

merchandise under the Antidumping Order and Countervailing Duty Order of Hardwood Plywood from China in 2018. More particularly, Plywood Source alleged that a video taken by its industrial spy shows Finewood's imported crates were too rigid to be 2-ply panels. Notice of Initiation at 3, PD 38 at PR000104; CD 17 at BC-000039.

Plywood Source relied upon blurry photograph excerpts from a video taken by its industrial spy fell which fell far short of the standard of review CBP uses in making a determination of evasion. See, 19 C.F.R. § 165.27(a) ("CBP will make a determination based on substantial evidence…") [emphasis added]. Plywood Source had no proof of what was inside the boxes— and presented none on the public record that IGF could address. The box at issue could very well be 2-ply panels imported from China and indeed made in China. Moreover, Plywood Source's general statement that 2-ply or thin panels naturally bend along the edge of the box when lifted by a forklift was unsubstantiated by any record evidence.

, Plywood Source also contended that Finewood's business operation was impossible because Finewood's selling price was much lower than other Vietnamese producers. Plywood Source made unsubstantiated assumptions that importers should have known that Finewood did not have the capacity to produce the orders. Plywood Source sought to game the system and eliminate a competitor by filing frivolous EAPA allegations for the sole purpose of unfairly competing with other importers.

On July 25, 2018, Customs and Border Protection ("CBP") acknowledged receipt of the allegation. On October 24, 2018, CBP officers along with U.S. Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) officers visited Finewood's plant without notice, and further scheduled an appointment to observe Finewood's production operation on the following day. See generally, CBP Interoffice Memorandum ("Attaché Report") (October 29, 2018). On October 25, 2018, three officers visited the plant. Id.

Based on that visit and the allegation made by Plywood Source, TRLED an investigation on November 20, 2018 under 19 U.S.C. § 1517(b)(1). See, CBP Notice of Initiation of

Investigation and Interim Measures (Nov. 20, 2018) PD 38; CD 17. There is no evidence to establish the expertise underlying the statements in the initial Attaché

CBP consolidated the investigations of five importers into a single investigation, including Far East American, Inc. ("FEA"), InterGlobal Forest LLC ("IGF"), Ciel Group, Inc. ("Ciel"), Liberty Woods International, Inc. ("Liberty Woods") and American Pacific Plywood, Inc. ("APPI") (collectively, the "Importers") under consolidated case number 7252.

Subsequently, TRLED issued six RFIs to Finewood and two rounds of RFIs to all five importers. See VR at 3 (summarizing he various party submissions). All responding parties provided robust detailed narrative responses with thousands of pages of documentation attached as exhibits, as the RFI were requests for "all" commercial records of the imports in question. In other words, unlike Department of Commerce anticircumvention proceedings which sample select small subsets of such records, CBP simply asked for "all" of them. Thus, CBP obtained an unusually enormous and comprehensive record of Finewood's exports and the import documentation as well. Apart from filing the allegations which contain some information that was never released to interested parties, the alleger has not submitted any new facts or comments or any rebuttals of the extensive facts placed on the record of the investigation

On May 16-17, 2019, several members of TRLED and of Regulatory Audit and Agency Advisory Services ("RAAS") conducted on-site verification at Finewood. The officials verified Finewood's submissions and took several walk throughs of the factory while it was quiet and while it was operating, as indicated in their report. Finewood explained the production capacity of its machinery, machine by machine, and explained its business model of outsourcing the production of plywood cores to local businesses when it was operating at or near capacity. Finewood fully cooperated and addressed successfully any and all discrepancies brought to its attention during the site visit.

**D. IGF and Finewood Cooperated Fully With the EAPA Investigation.**

As IGF described in detail in its initial RFI response, in [     ], IGF visited Finewood's factory in Vietnam and saw production equipment was being set up, and some press equipment was already in the building. See IGF Response to Question 6 – RFI, Exhibit 2 (March 6, 2019). Then, in [     ], IGF made another visit to Finewood's factory and took pictures of raw veneers laid on the floor and ready to be pressed into hardwood plywood. See, id. IGF's corporate officers personally observed the production process and legitimate plywood manufacturing operations. Id.

IGF understood that Finewood procured veneer and tolled core production to Vietnamese core manufacturers or sometimes purchased core directly from local companies. See generally, IGF Response to RFI; IGF Response to Supplemental RFI (April 17, 2019). Aside from several phone conversations, IGF submitted email correspondence with Finewood regarding IGF's request for Finewood to keep the quality consistent among different tollers. See, IGF Response to Question 3, Supplemental RFI, Exhibit S-2.

Additionally, IGF witnessed local veneers being delivered to the factory during both visits and hardwood plywood being produced on site. *See,* IGF Response to RFI, Exhibit 2; IGF Response to Supplemental RFI, Exhibit S-1. IGF verified Finewood's production capacities during both visits. IGF also knew from the beginning that Finewood would use some imported veneer and domestically supplied veneer and core to manufacture hardwood plywood at its factory in Vietnam.

IGF understood very well the substantial transformation rule applicable to country-of-origin determination and the covered merchandise under AD CVD order is plywood, i.e., plywood product that at least has a front, back veneer, and core veneer layer all produced in China. Thus, IGF understood that imported veneer, including two-ply from China is not covered by the Hardwood Plywood from China AD/CVD orders and is not Chinese plywood either, e.g., for purposes of country-of-origin determinations. From the overseas visits to Finewood's factory and the pictures of Finewood's operations, IGF has no reason to believe that Finewood could not produce sufficient hardwood plywood for IGF's orders. See generally, id.

IGF submitted all requested CBP Forms for all Finewood's sales. See, IGF Response to RFI, Exhibit 16. Exhibit 16 is organized by CBP entry packages, and within each package it includes CBP entry documents, commercial invoices, packing lists, purchase order, payment slips, sales confirmation, shipment correspondence, inbound and outbound transportation documents, freight payment, corresponding downstream customer purchaser orders and payments, etc. *Id.*

IGF kept all documentation related to Finewood's sales and cooperated fully in submitting these thousands of pages of documents. The CBP team at the verification noted no discrepancies in Finewood's record of production and sales documents for IGF's sales—based on CBP's own sampling method at verification. VR at 9. The verified Finewood record of sales documents corroborates the sales documents IGF has submitted on the record.

## II.    STATEMENT OF THE CASE

### A.    The Scope Of The Initial Orders Clearly Excluded Any Type Of Panel Which Did Not Consist Of At Least Two Plies And A Core.

Commerce published its AD and CVD Orders on U.S. imports of hardwood plywood from China on January 4, 2018. Commerce defined the scope of the Orders as follows:

> The merchandise subject to this investigation is hardwood and decorative plywood, and certain veneered panels as described below. For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, **consisting of two or more layers or plies of wood veneers <u>and</u> a core,** with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together. Hardwood and decorative plywood may include products that meet the American National Standard for Hardwood and Decorative Plywood, ANSI/HPVA HP-1-2016 (including any revisions to that standard).

For purposes of this investigation a "veneer" is a slice of wood regardless of thickness which is cut, sliced or sawed from a log, bolt, or flitch. **The face and back veneers are the outermost veneer of wood on either side of the core** irrespective of additional surface coatings or covers as described below.

**The core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers.** The core may be composed of a range of materials, including but not limited to, hardwood, softwood, particleboard, or medium-density fiberboard (MDF).

On its face, the scope of the Orders makes it clear that the subject merchandise <u>must</u> consist of at least two plies <u>*and a core*</u>. A two-ply panel is not within the face of the scope of the Orders.

## III.   RULE 56.2 STATEMENT

### A.   Administrative Determinations Subject to Appeal

The Administrative Procedures Act ("APA") specifically provides that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action," 5 U.S.C. §704. *See, FTC v. Standard Oil Co.*, 449 U.S. 232, 245 (1980). The administrative determinations subject to this appeal are:

1. The January 28, 2022, affirmative final determination issued by U.S. Customs and Border Protection's ("CBP") Trade Remedy & Law Enforcement Directorate ("TRLED"), which purported to find evasion (the "Evasion Determination"), under the Enforce and Protect Act ("EAPA") in EAPA Consolidated Case Number 7252, PD 136, CD 81

2. The June 6, 2022, decision issued by CBP's Office of Regulations and Rulings ("OR&R") in administrative appeal number H323923 (the "Appeal Determination") affirming the Evasion Determination, PD 148, CD 94, and

3. The supplemental determination affirming the Evasion Determination by OR&R on July 6, 2022 in administrative appeal number H325765 (the "Supplemental Determination") PD 151, CD 95.

**B.    Issues Presented**

Issue One: "The question arises as to whether the 2-ply cores of Chinese origin, which are further processed in Vietnam to include the face and back veneers of non-coniferous wood, are within the scope of the orders." *See* Dep't Commerce, Memorandum re: U.S. Customs and Border Protection Enforce and Protect Act Investigation No. 7252, Certain Hardwood Plywood Products from the People's Republic of China (A-570-051 and C-570-052); Placement of Covered Merchandise Referral Documents on the Record (Jan. 21, 2020) ("CBP Scope Referral").

Issue Two:  Did substantial transformation of two-ply panels take place in Vietnam when Finewood incorporated the two-ply panels it imported from China were incorporated in the finished hardwood plywood it produced and shipped to the U.S.?  Rejecting the substantial evidence that Finewood and the Importers put on the record[1], Commerce erroneously concluded that Finewood's extensive manufacturing process in Vietnam did not cause the two-ply panels to lose their identity and result in their transformation  into a new product with a new name, character, and use.

**IV.    STANDARD OF REVIEW**

The EAPA provides for the standard of judicial review in 19 U.S.C. §1517(g)(2). Federal courts have recognized that the standard of review for international trade cases also encompasses the standards established under the APA, 5 U.S.C. §706(2)(A).  *Changzhou Wujin Fine*

---

[1]  See Finewood Supplemental Questionnaire Response – Part IV and Information on Substantial Transformation dated April 20, 2021 at 14-24 and Exhibits SQ1-28 through SQ1-35.

*Chemical Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974)).

### A. Arbitrary and Capricious Standard.

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations omitted). Internal inconsistency and self-contradiction do not satisfy this requirement. There must be "a rational connection between facts found and choices made," *Motor Vehicle Mfrs*, at 43. Quite simply, there were no "facts found" as is required.

Further, the agency's rationale must address the parties' principal arguments. *See, CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1375-1381 (Fed. Cir. 2016) (analyzing in detail an agency's obligation to set forth a comprehensible and satisfactory justification for its determinations "as a reasonable implementation of statutory directives supported by substantial evidence"). *In Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350-52 (D.C. Cir. 2014) the Court underscored the importance of an agency's obligation to "articulate an explanation for its action," stating that "a fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action", citing *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001). Finally, an abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are unsupported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors. *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004).

### B. Substantial Evidence.

As defined by the Federal Circuit, "substantial evidence" is much more discerning than mere consideration of what CBP's agents' subjective minds might consider "adequate." "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of NY. v. NLRB*, 305 U.S. 197,229, 59 S. Ct. 206, 83 L. Ed. 126 (1938). .... While respecting agency expertise, the Supreme Court "has stressed the importance of not simply rubber-stamping agency fact-finding." *Dickinson v. Zurko*, 527 U.S. 150, 162, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999); *A. L. Patterson, Inc. v. United States*, 585 F. App'x 778, 781-82 (Fed. Cir. 2014).

Moreover, the agency's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 C.I.T. 82, 84 (1987). The substantial evidence standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quoting *Universal Camera*, 340 U.S. at 487); see also *Huvis Corp. v. United States*, 570 F.3d 1347, 1351 (Fed. Cir. 2009).

In this investigation, the Alleger and CBP bear a burden of proof to establish, based on substantial evidence, that IGF transshipped covered merchandise from China through Vietnam and on to the United States. IGF submits that CBP has not met this burden.

## V.    SUMMARY OF ARGUMENTS

1.    TRLED's conclusion that because Finewood used Vietnamese tollers to produce plywood cores and sourced veneer from China, it must have transshipped finished plywood from China is irrational and therefore arbitrary and capricious. TRLED inexplicably ignores the record evidence, including its own verification report, which proves that Finewood manufactured in Vietnam all of the finished plywood it exported to the United States.

2.  TRLED's insinuation that IGF failed to exercise due diligence in its business relations with Finewood are inappropriate and incorrect.  IGF visited Finewood several times to confirm that Finewood was sending raw materials to local tollers and receiving core platforms from these tollers.  Moreover, Finewood provided CBP with all contact information for its tollers and documentation of the raw materials it provided to the tollers and the finished cores Finewood received from the tollers.  At verification, Finewood invited CBP's auditors to visit the production sites of its tollers, which the auditors declined.

3.  The record evidence is clear that Finewood did not use two-ply for all finished products. The record is also clear that Finewood did not source finished plywood from China.  TRLED's interpretation that Commerce's Final Scope Ruling regarding two-ply implies that Finewood imported "finished plywood" from China is a gross misrepresentation of Commerce's scope ruling and findings.

4.  TRLED failed to observe basic due process principles of full disclosure, transparency, and IGF's right to be heard and defend against the agency's allegations.

## VI. ARGUMENT

### A. The Alleger is Not a Credible Source of Information.

In its determination of evasion against the U.S. importers, TRLED states that the Alleger's claims regarding Finewood's production capacity is central to TRLED's investigation.  TRLED Det. at 6.  TRLED cannot and should not, however, rely on the Alleger's unfounded claims that are not supported by the record facts of this case.

The Alleger is not a credible source of information upon which CBP can rely.  The Alleger is affiliated with Vietnamese manufacturers of hardwood plywood and interested only in eliminating competition from other Vietnamese plywood producers.  *See,* FEA Factual Submission at 2 and Exhibits A-4, A-5, A-6, A-7, A-8, and A-9.  Indeed, the Alleger's Vietnamese plywood producers are currently under investigation in Commerce's ongoing scope inquiry concerning

assembly of plywood in Vietnam from Chinese inputs. *See,* Dep't Commerce, Certain Hardwood Plywood Products From the People's Republic of China: Initiation of Anti-Circumvention Inquiries and Scope Inquiries on the Antidumping Duty and Countervailing Duty Orders; Vietnam Assembly, 85 Fed. Reg. 36,530 (June 17, 2020). Due to the irregularities in the Alleger's import documentation and the Alleger's questionable supply chain of veneer and other imports for its Vietnamese plywood production, CBP should not rely on any information that the Alleger submitted to the agency. See FEA Factual Submission at 3-5 and Exhibits A-4, A-5, A-6, A-7, A-8, and A-9. TRLED could have asked the Alleger to clarify its business interests in Vietnam, but declined to do so. *Id.* at 4-5.

Further, to date, CBP has not disclosed to IGF or its legal counsel under an administrative protective order ("APO") critical parts of the data that the Alleger claims support its allegations of evasion, including the narrative of the allegation, videos and trade data. The Alleger even refused to disclose to CBP the source of its trade data, which TRLED appears to accept as valid in its determination. TRLED cites as "substantiation" of the Alleger's claim of what "does appear to be an original source document" because the Alleger itself attested to its validity, but the actual person providing the data wished to remain anonymous. *See,* TRLED Det. at 3-4 and FN 15. In other words, TRLED used data that a biased interested party, the Alleger, provided, the authenticity and veracity of which TRLED had no means to verify because the Alleger did not identify the source of the data, even to TRLED. The obligation to verify rests with the administering authority, and not with the private parties before it. *See, Bomont Industries v. United States*, 718 F. Supp. 958, 964 (Ct. Int'l Trade 1989). TRLED's blind acceptance of the Alleger's allegations and information purportedly supporting the allegations was highly inappropriate and entirely unwarranted. The Alleger's claims regarding Finewood's production capacity are not supported by substantial evidence, and TRLED should not have relied on any such information in its determination of evasion.

**B. Finewood Toll-Manufactured Plywood Cores to Increase its Capacity.**

As Finewood and the importers explained in their questionnaire responses, Finewood toll-manufactured some of the cores for plywood that Finewood sold to the United States. Under this arrangement, Finewood delivered wood veneers to third-party tollers in Vietnam to have them lay the veneer into plywood cores. The tollers then delivered the plywood cores back to Finewood for gluing front and back veneer and performing all other finishing operations. In its very first questionnaire response to TRLED, Finewood identified the Vietnamese tollers that it used during the period of investigation. *See,* Finewood, EAPA Con. Case No. 7252 – Vietnam Finewood Questionnaire Response (March 22, 2019) at 1, 15 and Exhibit 9. CD 51 ("Finewood RFI Rsp."). Finewood provided additional information on its tollers and its business practices vis-à-vis its tollers in its supplemental questionnaire responses, including service orders and payment details. *See,* Finewood, 1st Supplemental Request for Information Questionnaire Response (April 8, 2019) CD 53 at 2-3 and Exhibit SQl-2 ("Finewood 1st "SQR") and Finewood, 5th Supplemental Request for Information Questionnaire Response CD 68-69 (May 3, 2019) at 1-3 and Exhibit SQ5-1 ("Finewood 5th SQR").

TRLED's assumptions that Finewood was somehow less than transparent with its U.S. customers is completely misplaced. *See,* TRLED Det. at 6. No commercial enterprise would point its customers to the competition, which might encourage the customer to transfer its business to the competition. For purposes of the EAPA investigation, however, Finewood provided TRLED with all of the contact information on its tollers for TRLED to investigate and verify. *See,* Finewood RFI Rsp. at 1, 15, and Exhibit 9, CD 50; Finewood 1st SQR at 2-3 and Exhibit SQl-2; Finewood 4th SQR at Exhibit SQ4-2; and Finewood 5th SQR at 1-2 and Exhibit SQ5-l.

TRLED's argument that Finewood's outsourcing of some manufacturing of plywood cores indicates transshipment of finished plywood from China is simply logically false. Finewood's outsourcing of manufacturing step indisputably increased its production capacity in Vietnam. Finewood had no need to transship finished plywood from China to fulfill its production orders from U.S. customers. As cited above, Finewood expanded its factory capacity by outsourcing

some laying up of plywood cores and purchasing some plywood from local manufacturers. CBP's verification team verified Finewood's domestic purchase records as well as production records (including the outsourced production of plywood cores) and found only one discrepancy in a payment record, which was explained during verification. *See,* Verification Report, PD 120, CD 70 at 7-9. TRLED makes no mention of Finewood's verified documentation in its determination of evasion. *See,* TRLED Det. at 6-8.

Finewood conclusively established the fact that its production capacity equals or surpasses the shipments it made at all times throughout the period of investigation, *i.e.*, from May 2018, when Finewood started production and shipments to the United States, through the pendency of the EAPA investigation. CBP's verification report stated that "the focus of the investigation was to obtain information on whether VN Finewood could produce/manufacture sufficient quantities of hardwood plywood to export to the United States." VR at 3. Finewood could and did. As the report correctly noted, Finewood used tolling services and outsourced its core build-up production to other local Vietnamese factories. *Id.* at 6. Finewood also purchased substantial amounts of core from other local Vietnamese factories. As cited above, Finewood documented its domestic purchases throughout its questionnaire responses, which CBP's verification team verified. *Id.* at 8.

CBP's Attaché Report dated October 29, 2018 (PD 31, CD 10) also indicated that CBP's agents witnessed the unloading of purchased core when they walked out of the office for the plant tour. *See,* Attaché Report PD 31, CD 10 at 3 ("While exiting the office, the visit team asked about a flatbed truckload of finished plywood that was being unloaded at the door of one of the buildings. VF officials indicated that the plywood was sourced from [ ] . The pallets of finished plywood were uncovered, banded and marked as [] with red spray paint on the side of the pallets.")

CBP's agents, however, erred and misunderstood the core as "finished plywood." As summarized in TRLED's Verification Report, Finewood advised its customers of its business

plans, which all involved routine tolling of cores and production of hardwood plywood in Vietnam. VR at 4-5.

Finewood disagrees with TRLED and CBP's verification team's statement that, due to tolling services involved in Finewood's production, it could not calculate Finewood's production capacity. *See,* VR at 6 and TRLED Det. at 7. Two distinct circumstances significantly expanded Finewood's capacity. Finewood used tolling services (outsourcing core production with veneer Finewood purchased/owned) and also purchased core outright from small local Vietnamese factories. Finewood provided production records for all U.S. sales, records for the purchase and maintenance of all of its machinery, and raw material purchase records, as discussed in more detail below. All of Finewood's production and sales records reconcile with each other, and each sale package was accompanied by the production records for that sale.

CBP's own verification team reviewed all documents submitted and selected 12 imported raw material purchases, 16 domestic raw material purchases, and 19 U.S. sales packages with production records to be verified on site. VR at 5 & 7-9. The verifiers found no material discrepancies. Finewood's business practice to toll-produce plywood cores and purchase plywood cores when necessary only enhanced its overall ability to produce hardwood plywood in Vietnam.

For information on tolling services that TRLED requested in its Fifth supplemental questionnaire, Finewood identified the "first 4 sales that involve tolling for each of the 5 importers." *See,* Finewood 5th SQR, response to Question 1 and Exhibit SQ5-l. Finewood further linked all 20 sales to the complete U.S. sales contracts, shipment documents, and payment records submitted in response to the original questionnaire. *See, id.* (left column identifying exhibit number from Exhibit 1 submitted for Finewood's initial RFI response).

In fact, as Finewood explained, for each tolled core/platform (cores), it submitted material out vouchers and warehouse-out tickets for the raw material, which were marked as [     ]. *See,* Finewood 1st SQR, response to Question 2 and Exhibit SQ 1-2. After the toller produced the core or core platform and returned the product to Finewood, the material-in voucher and warehouse-in

ticket was marked [    ] as well. *Id.* Then, another set of the in/out vouchers and inventory tickets corresponds to the same purchase order because Finewood withdrew that product and other veneers in order to produce a piece of plywood, and the tolled core/platform is marked [    ] on all these tickets. Id. Indeed, Finewood explained in detail its production documents to enable TRLED to fully understand Finewood's production process for its core/core platform and the exact portion that was toll-processed, the exact portion that was self-produced, and the exact portion that was directly purchased.

FEA has submitted three expert statements establishing that the same type of hot-pressing machine that Finewood used is able to produce at least 63,000 sheets per machine per month. See FEA Voluntary submission of Factual Information (April 9, 2019) at 2, Exhibit Al-A3. FEA's submitted statements remain unrebutted on the closed record of this investigation. No interested party attempted to rebut the capacity statements or supply their own expert statements of the capacity of the machines. Accordingly, CBP must consider FEA's unrebutted statements authoritative for the purposes of the administrative record of this case.

Finewood has supplied all its machinery's purchase and payment records, as well as the installment month of the machines. *See,* Finewood RFI Rsp., response to Question 6 and Exhibit 5, CD 47. Finewood has estimated its maximum capacity from record information as follows:

The bottleneck of Finewood's capacity is the number of hot-pressing machines, as it always had more cold-pressing machines installed than hot-pressing machines. For May and June 2018, Finewood could press at least [          ]. In July 2018, Finewood installed the [    ] hot-pressing machine, which increased the capacity to [                              ]. For August, September

and October 2018, Finewood could press at least [        ]. In November 2018, Finewood installed the [          ] hot-pressing machine, which increased the capacity to [          ].

C. **IGF Did Not Participate In An Alleged Transshipment Scheme to Evade Applicable Duties As It Took Beyond Reasonable Steps to Verify Finewood's Production.**

As TRLED's notice of investigation stated, evasion requires, "not only that merchandise subject to an AD and/or CVD duty order was entered into the United States by the importer alleged to be evading, *but that such entry was made by a material false statement or act, or material omission*, that resulted in the reduction or avoidance of  applicable AD and/or CVD duty cash deposits or other security. *See* CBP, Notice of  Initiation of Investigation and Interim Measures at 4 (Nov. 20, 2018) {emphasis added}. For an importer to be liable for the duties owed by alleged covered merchandise, under section 1517 of the statute, CBP must find that *the importer has the knowledge that the material statements made by IGF in its entry documentation are false in any respect*. {Emphasis added.}

The Attaché Report indicated that Finewood officials showed CBP's agents during the plant tour the location where new hot-pressing machines and cold-pressing machines would be installed, which is consistent with Finewood's machinery purchase list and supporting documents. *See* Attaché Report PD 31, CD 10 at 3 ("VF officials showed the visit team two areas where VF was going to install a [].") and Finewood RFI Rsp. at 8 and Exhibits 5 & 6 CD 47,48 (machine records and depreciation schedule).

D. **Finewood Submitted Production Records for All Sales.**

Finewood submitted all of its production records to TRLED, for a total of [   ] sales, including [   ] sales to the five U.S. importers under investigation, [as well as sales to other U.S. importers not under investigation]. Finewood produced [   ] packages of invoices, packing lists, bills of lading, payment slips, and cost and production records. *See* Finewood RFI Rsp. at Exhibit 1 (totaling [ ] pages of documents). In its final determination, TRLED raised no accusation of discrepancy in Finewood's documentation.

Further, in its first supplemental RFI, CBP asked Finewood to explain the documents in the packages and differentiate the wholly self-produced plywood from the toll-processed plywood, which Finewood explained in 34 pages of exhibits. *See* Finewood 1st SQR at Exhibits SQl-1 and Exhibit SQl-2. The summary chart for Exhibit 1 was later revised at TRLED's request in its 2nd supplemental RFI. *See* Finewood, Vietnam Finewood 2nd Supplemental Request for Information Questionnaire Response PD 109, CD 56 (April 9, 2019), response to Question 1 and Exhibit SQ2-1 ("Finewood 2nd SQR"). In Exhibit SQ2-1, Finewood highlighted all sales that contained imported 2-ply panels in a summary excel chart. *Id.* (totaling 24 pages PDF print out). In reviewing its purchase records of two-ply veneer, Finewood noticed that in some of the sales documents, it inadvertently marked 5.2mm core platforms as "2-ply" during translation. Finewood therefore resubmitted all packages that contained this translation error for 5.2mm cores and wrote "correction" in the margin on specific pages. *See* Finewood, Vietnam Finewood 4th Supplemental Request for Information Questionnaire Response PD 114, CD 66 (April 18, 2019) at Exhibit SQ4-4 ("Finewood 4th SQR") (totaling 555 pages of documents). For these thousands of pages of sales and production records, CBP's verification team selected 19 sets to verify on-site, and found no discrepancies. VR at 8-9.

### E. Finewood Submitted All Records of Purchased Materials and Inputs.

Finewood submitted all of its purchase records to TRLED. Initially, in its response to TRLED's first RFI, Finewood submitted in Exhibit 8 purchases of imported materials and in Exhibit 9 purchases of local materials. *See* Finewood RFI Rsp. at Exhibits 8 & 9. With respect to purchases of imported materials, Finewood submitted packages of its contracts, invoices, packing lists, bills of lading, entry forms, and payment slips for each purchase, totaling 870 pages of documents. *Id.,* Exhibit 8. For raw materials sourced locally, Finewood submitted sets of invoices and payment slips, totaling 506 pages of documents. *Id.,* Exhibit 9. In its response to the 4th supplemental RFI, Finewood revised Exhibits 8 and 9 to add a column to reflect the accounting code for each and every purchase, as CBP requested. *See* Finewood 4th SQR PD 114, CD 66 at

Question 1 -Exhibits SQ4-1 & SQ4-2. Finewood also highlighted all 5.2mm core platform purchases, as the supplemental RFI instructed. See Finewood 4th SQR, response to Question 3 - Exhibit SQ4-2. In its last supplemental RFI response, Finewood revised Exhibit SQ4-1 again to add the specific dates of warehouse-in for all imported materials purchases. See Finewood 5th SQR, response to Question 4 - Exhibit SQ5-2.

During CBP's verification, the team verified all of Finewood's local purchases and found a single immaterial discrepancy, "Notation on One Payment." VR at 8 and Attachment II. The discrepancy concerned a corrected accounting note on one invoice of several documents of one payment record of [  ] domestic purchase records, containing hundreds of payment slips. *See* Finewood RFI QR, Exhibit 9 (March 22, 2019). With respect to all of Finewood's import purchases, the team found that "the original purchase documents matched those previously submitted by VN Finewood to CBP" for the 2-ply purchases. VR at 6. Furthermore, "the original purchases and payment documents provided on site matched those previously provided in the RFI requests" for the "the remaining ... single ply veneer sheets and UV coating materials." *Id.* at 7.

### F.  IGF Exercised Due Diligence in its Business Relations with Finewood.

In its determination of evasion, TRLED appears to claim that IGF and the other respondent importers were somehow remiss in their due diligence to "verify the capability, or existence of, VN Finewood's domestic sources." TRLED characterizes the importers' business relations with Finewood as "based only on VN Finewood's assurance, or the Importers' cursory review of unverified records."

Yet, CBP officials themselves verified Finewood in May 2019, after Finewood, IGF, and the other Importers provided TRLED with all requested documents pertaining to their business transactions. Not once during the investigation nor during verification did TRLED or any other branch of CBP raise a doubt as to the *existence* of Finewood's tollers and Vietnamese domestic suppliers. As discussed above, Finewood provided contact information for its Vietnamese suppliers to TRLED several times. *See* Finewood RFI Rsp. at 1, 15, and Exhibit 9; Finewood 1st

SQR at 2-3 and Exhibit SQ 1-2; Finewood 4th SQR at Exhibit SQ4-2; and Finewood 5th SQR at 1-2 and Exhibit SQ5-l.

Finally, as CBP's verifiers can attest, at verification, Finewood offered to take CBP's verifiers to the tollers' factories, which the verifiers declined to do. CBP cannot now pretend that Finewood's tollers do not even exist when CBP had the opportunity to verify the tollers' production operations and CBP did not take advantage of that opportunity. The administrative record of EAPA Inv. 7252 does not document that CBP otherwise tried to contact Finewood's tollers, although TRLED had all of the necessary contact information as early as March 22, 2019 when Finewood submitted its first questionnaire response with TRLED (see PD 87, CD 51). TRLED has now had three years to verify the existence of Finewood's tollers and has made no effort to do so. It appears that CBP and TRLED have forgotten their own due diligence to verify and review the record documentation of Finewood's production using tolling services and Finewood's accounting of such services. TRLED also appears to have forgotten to read CBP's verification report or to consult with the verifiers regarding their verification of Finewood's tollers. TRLED's theory questioning the existence of Finewood's tollers is purely contrived in an attempt to lay blame unreasonably at the feet of the importers.

As to IGF, and as described in detail in the initial RFI response, in [    ],IGF visited Finewood's factory in Vietnam and saw production equipment was being set up, and some press equipment was already in the building. See IGF Response to Question 6 – RFI,   (March6, 2019). Then, in [    ], IGF made another visit to Finewood's factory and took pictures of raw veneers laid on the floor and ready to be pressed into hardwood plywood. See id. IGF's corporate officers personally observed the production process and legitimate plywood manufacturing operations. Id. IGF understood that Finewood procured veneer and tolled core production to Vietnamese core manufacturers or sometimes purchased core directly from local companies. See generally, IGF Response to RFI; IGF Response to Supplemental RFI CD 61 (April 17,2019). Aside from several phone conversations, IGF submitted email correspondence with Finewood regarding IGF's request

for Finewood to keep the quality consistent among different tollers. See IGF Response to Question 3, Supplemental RFI, Exhibit S-2. Additionally, IGF witnessed local veneers being delivered to the factory during both visits and hardwood plywood being produced on site. See IGF Response to RFI, CD 39-41, Exhibit 2; IGF Response to Supplemental RFI, Exhibit S-1. IGF verified Finewood's production capacities during both visits. IGF also knew from the beginning that Finewood would use some imported veneer and domestically supplied veneer and core to manufacture hardwood plywood at its factory in Vietnam. IGF understood very well the substantial transformation rule applicable to country of origin determination and the covered merchandise under AD CVD order is plywood, i.e. ,plywood product that at least has a front, back veneer, and core veneer layer all produced in China. Thus, IGF understood that imported veneer, including two-ply from China is not covered by the Hardwood Plywood from China AD/CVD orders and is not Chinese plywood either, e.g., for purposes of country of origin determinations. From the overseas visits to Finewood's factory and the pictures of Finewood's operations, IGF has no reason to believe that Finewood could not produce sufficient hardwood plywood for IGF's orders. See generally, id. IGF submitted all requested CBP Forms for all Finewood's sales. See IGF Response to RFI, Exhibit 16. Exhibit 16 is organized by CBP entry packages, and within each package it includes CBP entry documents, commercial invoices, packing lists, purchase orders, payment slips, sales confirmation, shipment correspondence, inbound and outbound transportation documents, freight payment, corresponding downstream customer purchaser orders and payments, etc. Id. IGF kept all documentation related to Finewood's sales and cooperated fully in submitting these thousands of pages of documents. The CBP team at the verification noted no discrepancies in Finewood's record of production and sales documents for IGF's sales—based on CBP's own sampling method at verification.VRat9. The verified Finewood record of sales documents corroborates the sales documents IGF has submitted on the record.

Accordingly, TRLED did not establish that IGF acted with any level of culpability when IGF purchased and imported Finewood's hardwood plywood; i.e., TRLED has not shown that IGF

intentionally or negligently made any material and false statement or act or material omission in importing hardwood plywood from Vietnam. *See* 19 U.S.C. § 1517(a)(5)(A); 19 C.F.R. § 165.1. As the U.S. Court of International Trade has found "neither the text of the EAPA statute nor 19 C.F.R. 165.1 supports Customs' statement that it does not need to establish 'any level of culpability."' *Diamond Tools Tech. LLC*, 2021 Ct. Intl. Trade LEXIS 155 at 70-72.

In conclusion, ORR should reject TRLED's argument that IGF failed to exercise due diligence in its business relations with Finewood. IGF did not enter covered merchandise into the U.S. by evasion.

### G. Finewood's Records Show that it Did Not Use Two-Ply for All Finished Plywood Products.

In its final determination, TRLED did not distinguish between Finewood's finished plywood that incorporated two-ply in its production and Finewood's finish product that did not use two-ply in production. TRLED Det. at 8. Instead, TRLED maintains that "no reliable evidence exists on the record to differentiate between Vietnam-origin and Chinese-origin hardwood plywood .... " This is patently untrue. TRLED made no attempt whatsoever to review and scrutinize the record that shows that Finewood could, and did, track its inputs for each production run and fulfilled purchase order and identified exactly which shipments to the U.S. contained finished hardwood plywood that incorporated two-ply. As discussed above, Finewood provided documentation for every purchase of two-ply panels. *See* Finewood RFI Rsp. at Exhibit 8.1 through 8.79 (documenting all imported materials). CBP's verification team found that the original documents matched those previously submitted by VN Finewood to CBP. VR at 7.

VN Finewood tracked through its production records and marked every sale of hardwood plywood that consumed two-ply panels as an input in its normal course of business. Finewood 2nd SQR at Exhibit SQ2-1 (summary); *see also* Finewood RFI Rsp at Exhibit 1 (providing documentation for all sales including the cost and production records for each sale); *see also* Finewood 1st SQR at Exhibit SQl-1 (explaining the production record documentation

demonstrating material out vouchers and warehouse-out tickets for each stage from the raw material to the finished goods for each sale). The CBP team verified these records for 19 sales, including [    sales that had two-ply panels inputs consumed in the production. The CBP team observed how Finewood enters these purchases into its accounting system and how the entered data flows through Finewood's accounting system to its financial report. *See* VR at 7; *see also* Finewood RFI Rsp. at Exhibit 16 (Finewood financial report).

Through this careful verified documentation of consumption, Finewood demonstrated that two-ply was used in some, but not all, of the production of 12mm, 15mm, and 18mm finished hardwood plywood. Finewood 2nd SQR at Exhibit SQ2-l. In particular, Finewood used no two-ply in its production of 5.2mm finished hardwood plywood. Due to the reliability of Finewood's production documentation and accounting system, ORR should at a minimum determine that all of Finewood's finished plywood that did not use two-ply sourced from China in its plywood production must be excluded from TRLED's findings of evasion.

**H. Notwithstanding Commerce's Scope Determination, the Record Evidence is Clear that Finewood Did Not Source "Hardwood Plywood" from China.**

**1. TRLED Did Not Understand Commerce's Scope Ruling on Two-Ply.**

TRLED maintains that Commerce's scope ruling on two-ply refutes Finewood's statement that it did not source finished hardwood plywood and resell to the United States. TRLED Det. at 7. To the contrary, Finewood did not transship and did not resell Chinese hardwood plywood to the U.S. In its scope ruling, Commerce interprets the scope language as covering two distinct articles: (1) hardwood plywood, which must be composed of at least three plies, *i.e.,* front and back veneer and a core; and (2) and certain veneer panels, for which the scope text provides no definition and no examples. *See* Commerce Scope Ruling at 11. Thus, Finewood did not transship and "commingle" Chinese hardwood plywood with Vietnamese plywood. Finewood used two-ply, which Commerce claims is a "certain veneered panel," but which is not defined by the scope of

the Orders, to produce some of its hardwood plywood in Vietnam. TRLED's interpretation of Commerce's scope determination concerning two-ply is simply incorrect.

Further, TRLED incorrectly assumed that because Commerce determined that two-ply was in the scope of the Orders, Finewood's plywood manufactured in Vietnam must also be in the scope of the Orders. *Peer Bearing* is a case concerning a Commerce scope decision on whether tapered roller bearings ("TRBs") manufactured in Thailand were covered by the antidumping duty order on TRBs from China. *Peer Bearing Company-Changshan v. United States*, 986 F. Supp. 2d 1389 (Ct. Int'l Trade 2014) ("Peer Bearing II"). In that case the Thai manufacturer imported cups and cones from China, which were covered by the TRB order as "parts," for the production of finished TRBs in Thailand. The Court stated: . "It was in Thailand, not China, that the imported merchandise became 'tapered roller bearings,' for, as discussed in *Peer Bearing-Changshan,* no part that was exported from China to Thailand plausibly could be described as an unfinished TRB." *Peer Bearing II* at 1400, referring to *Peer Bearing Co. Changshan v. United States*, 884 F. Supp. 2d 1313, 1324 (Ct. Int'l Trade 2012). Similarly, in our case, Commerce did not determine that two-ply is "unfinished plywood," but rather two-ply is a "certain veneered panel" and a product distinct from plywood. Finewood exported to the U.S. only finished plywood manufactured in Vietnam.

## 2. TRLED's Conclusions Regarding Record Evidence Lack Merit.

TRLED writes further that "there is no feasible method on the record to distinguish between Chinese-origin merchandise subject to the Orders transshipped by VN Finewood, the company's actual production, and whether the sales containing Chinese-origin merchandise were foreign or domestic." TRLED Det. at 8. First, as discussed at length above, TRLED failed to consult the administrative record of EAPA Inv. 7252 and review its own questionnaires and Finewood's narrative responses and documentation in response to TRLED's request for information. Finewood recorded exactly which U.S. shipments included two-ply in its production of finished plywood. Second, as discussed, Finewood did not "transship" anything. Finewood

imported two-ply from China to include in its production of finished plywood, defined as requiring at least three plies of veneer. In other words, even if two-ply is a "certain veneered panel," as Commerce now claims, it is a product distinct from "hardwood plywood." Finewood manufactured and exported to the United States only hardwood plywood with a minimum of three plies, not certain veneer panels. Since Commerce considers the two articles distinct, it is impossible that Finewood's finished hardwood plywood is, at the same time, "certain veneered panels." For this reason alone, Commerce's substantial transformation analysis must fail. *See* Commerce Scope Ruling at 20-43. Following Commerce's own argument of two distinct in-scope products: (1) hardwood plywood and (2) certain veneered panels, CBP must logically find that Finewood's finished plywood that it exported to the U.S. is a new article, distinct from the two-ply used in production of the plywood.

Third, Finewood had no domestic sales at the time it was selling plywood to the United States. *See* Finewood 5th SQR at 2. Regarding domestic sales, CBP's verification team claimed that during its preliminary interview of Finewood's staff at verification, Finewood claimed to have a certain percentage of domestic sales. *See* VR at 6. The Verification Report is not correct in this regard. At the very outset of the verification visit, in the introductory 30-minute overview, the company explained (at CBP's prompting), and their counsel translated into English to the CBP Team, that Finewood's so-called []. Finewood reported that the split approximately was [    ] "domestic for export" and 50% direct export]. In this sense, Finewood's sales were [    ]. Finewood then confirmed the attorney's translation of its statement, and the verification team moved on to other matters. The CBP team did not ask for documentary support for these introductory remarks; and this apparent discrepancy was never raised to Finewood over the course of two full days of verification for further explanation. Finewood and its legal counsel therefore thought that the matter was understood. Finewood gave the same response to CBP's agents during their October 29, 2018 visit, which Finewood believes should be reflected in the blanked out information between confidentiality brackets in their report. Attaché Report at 2. Moreover, Finewood has

documented each and every sale under investigation, as requested, from its production records to shipment to the United States. TRLED's cursory and totally inaccurate statements about Finewood's accounting or assertions of a lack thereof call into question the overall integrity of TRLED's findings and merit a negative evasion finding *overall* by ORR concerning all of Finewood's U.S. sales.

## I. Additional Comments on Attaché Report

During verification, Finewood and its attorneys attempted to explain the misunderstandings in the Attaché visit, but CBP did not given them a real opportunity as CBP maintained that the verification was a "clean slate audit." Finewood recalls that three officers visited Finewood on October 25, 2018, one of whom could speak some Vietnamese and translate between Vietnamese and English. *See* Attaché Report at 2. Finewood officers and staff noticed substantial translation difficulties during the communications, which were further substantiated by the Attaché visit report. This is consistent with the instant counsel's observations that the translator for the second visit also struggled greatly to communicate a great deal of information in a specialty field between three languages.

For example, when CBP asked Finewood officials the type of wood used to produce plywood, Finewood officials listed several wood species, including birch, poplar, eucalyptus, acacia, etc., but noticed that the translator translated only two or three words. It is mentioned in the Attaché Report that "[i]t is interesting to note that they never mentioned [    ]." Attaché Report at 2. The later initiation notice confirmed that the bracketed word is "birch." NOI at 5. Finewood officials clearly remembered that they mentioned birch because all Finewood's U.S. sales were birch plywood. It is hard to imagine why Finewood logically would not mention birch in response to CBP's question when the visitors were surrounded by birch plywood. That also begs general questions about the officials' industry expertise in plywood and wood species generally.

When asked how many presses the company operated, Finewood officials clearly remembered that they responded there were [ ] hot presses and [] cold presses, and Finewood was

going to install [] more hot press and [] more cold presses. Attaché Report at 3. This answer is consistent with the machinery list and supporting purchase documents as submitted in the RFI response. *See* Finewood RFI Rsp. at Exhibit 5. The Attaché Report indicated the officers noticed at the plant tour that the number of presses contradicted with the number offered by Finewood officials. Attaché Report at 3. It is hard to imagine why Finewood officials would lie on the number of presses, which CBP's agents could easily count during the plant tour steps away? The only possible explanation is that this is due to misunderstanding arising from the translation. However, the officers never indicated their concerns to Finewood; otherwise, it would have been easily clarified or resolved on-site.

Upon review of the Attaché Report, Finewood believes there are also other misunderstandings caused by mistranslation. Due to the lack of prior notice of the visit, Finewood could not arrange to have counsel or skilled translation help present for the visit. They could only answer the questions asked but could not provide additional information to serve the purpose of the visit because they did not know what the visit was really about. Otherwise, Finewood would have indicated that they used tollers and imported two-ply to further manufacture for U.S. shipments rather than finished plywood. Finewood also could have directed the visitors to unopened units of imported two-ply sheets to demonstrate that it was not plywood. Although the officers did see domestically purchased/tolled core unloaded, they mistook them as finished plywood and did not realize that purchased core could enlarge Finewood's production capacity. Attaché Report at 3. Generally, CBP's verifiers never provided Finewood any chance to clarify what the officers thought were inconsistencies and in this respect, the Attaché Report is unreliable and incomplete.

**J. CBP Has Not Observed Minimum Requirements of Due Process in its Conduct of EAPA Inv. 7252.**

Respondents and/or targets of the EAPA law and investigations have a right to legal counsel and qualified translators present for *all* official interactions and site visits in particular. For

informal proceedings and adjudications such as EAPA investigations that do not require a formal hearing under the APA, 5 U.S.C. § 555 is applicable. *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474,484 (2006), *citing to Pension Benefit Guar. Corp. v. The LTV Corp., Inc.,* 496 U.S. 633, 655, 110 S. Ct. 2668, 110 L. Ed. 2d 579 (1990). The fundamental requirements of due process in accordance with 5 U.S.C. § 555(b) require that TRLED ensure that every interested party has an opportunity for *effective* legal representation. ("A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative.")

Further, CBP should have established a protective order in EAPA Inv. 7252 for access to confidential information. Providing counsel full access to all record information, including confidential information, is crucial to ensure that respondents can fully defend against allegations. Many of the same manner of claims, e.g., fraud, circumvention, etc., are commonly alleged in AD/CVD proceedings administered by the Commerce Department; and all are handled adequately through administrative protective orders or "APOs." CBP provided no rationale for not granting legal counsel access to all the information in the EAPA proceedings, particularly as they essentially result in the same consequence as a scope ruling, i.e., products potentially outside the scope of AD/CVD orders are potentially placed inside their scope with potentially retroactive effect. In fact, major petitioner law firms commenting on the EAPA draft regulations took the position that all parties' rights of participation would be compromised without access to APO. *See* Wiley Rein LLP, Ltr to CBP re: Docket No. USCBP-2016-0053: Comments on Interim Final Regulations Regarding Investigation of Claims of Evasion of Antidumping and Countervailing Duties (Dec. 20, 2016) at 7-8.

Above all, CBP and the U.S. Government have no conceivable interest in keeping a filed allegation of evasion and CBP's initiation of an EAPA investigation secret for three months before informing the targeted parties of the allegations and investigation. The purpose of the EAPA law is not to maximize the Government's revenue, but rather *prevent* the evasion of AD and CVD

Orders. *See* Trade Facilitation and Trade Enforcement Act of 2015, Title IV, "Prevention of Evasion of Antidumping and Countervailing Duty Orders" ("TFTEA"). Sec. 411 of the TFTEA establishes CBP's "Trade Remedy Law Enforcement Division," which shall be dedicated - (A) to the development and administration of policies to prevent and counter evasion.... " TFTEA Sec. 411 (3)(A). Surely, the best way to prevent evasion is providing immediate notification to the targeted importer that it is under investigation for EAPA violations. Whether or not the allegation ultimately proves to be true, the U.S. importer cannot afford to continue importing the covered merchandise, and the U.S. industry receives immediate relief from the perceived threat of the foreign imports.

CBP's timely notification of the allegations against IGF and Finewood would have enabled the targeted parties to defend against the allegations with a chance to avoid the imposition of interim measures altogether. At a minimum, timely notice and disclosure of the evasion allegations and CBP's initiation of its EAPA investigation and the allegations would have allowed Plaintiffs to mitigate financial and contractual losses, before CBP's imposition of interim measures. "{W}hen a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented .... No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-172 (1951). *See also Londoner v. City and County of Denver*, 210 U.S. 373 (1908) (holding that prior to the imposition of an individual sanction by the government, basic fairness demands notice and an opportunity to be heard).

Congress authorized CBP to initiate an investigation under EAPA only if CBP were to determine that information "reasonably suggests that covered merchandise has been entered into the Customs Territory of the United States through evasion." Substantial evidence on the administrative record does not support CBP's decision to initiate this investigation.

The videos provided by the Alleger have already been dismissed by OR&R at page 20 of the Appeal Determination as not "providing any relevant evidence of transshipment or evidence of Finewood's product capacity, or lack thereof . . . " because they lacked audio, were of poor quality, did not establish where the videos were filmed or if "covered merchandise" was even depicted, showed no production activities and did not provide any connection to IGF's imported merchandise. OR&R characterized these videos in the Appeal Determination as constituting the "majority of the Alleger's allegations. . . ." These mortal legal defects relating to the videos existed at the time CBP elected to initiate this investigation.

Furthermore, CBP did not independently verify the veracity of the spreadsheets submitted by the Alleger with its EAPA petition, which purported to contain "Official Vietnamese Customs Data,"  The Alleger is a business competitor of IGF and the other Importers, and represented to CBP that its source for this information wished to remain anonymous. Instead of testing the data and verifying its authenticity and accuracy, CBP unqualifiedly accepted at face value the Alleger's representation that the purported "Vietnamese Customs data" was accurate. Consequently, CBP had no credible, unbiased, and independently verified information that reasonably suggested that IGF was evading the Orders. As such, CBP's determination to initiate an EAPA investigation against IGF was unsupported by reasonable evidence in violation of 19 U.S.C. § 1517(b)(l) or was otherwise not in accordance with law and unsupported by substantial evidence as required under 19 U.S.C. § 1517(c)(l)(A) and should be voided ab initio.

VII.    CONCLUSION

For the reasons set forth above, IGF submits that TRLED has not met its burden to establish, based on substantial evidence and taking into account all that detracts from that evidence, that IGF evaded the Hardwood Plywood AD/CVD Orders by transshipping covered merchandise to the United States through Vietnam. Accordingly, IGF requests that ORR reverse TRLED's

determination of evasion, terminate the investigation, and order CBP to reliquidate the affected entries without regard to AD/CVD duties.

Sincerely,

*/s/ Ignacio J. Lazo*
Ignacio J. Lazo
Counsel for InterGlobal Forest LLC

## *ATTORNEY CERTIFICATION*

I, **Ignacio J. Lazo**, of **Cadden & Fuller LLP**, counsel to **InterGlobal Forest LLC**, certify the following:

(i)     All statements in this submission (and any attachments) are accurate and true to the best of my knowledge and belief.

(ii)     Any information for which I have not requested business confidential treatment pursuant to 19 CFR 165.4(a) may be released for public consumption.

(iii)     I will advise CBP promptly of any knowledge of or reason to suspect that the covered merchandise poses any health or safety risk to U.S. consumers pursuant to 19 C.F.R. 165.7(a).

 

*Signature:*     /s/Ignacio J. Lazo
                         Ignacio J. Lazo

*Date:*          January 13, 2023

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word using a proportionally spaced typeface (Times New Roman 12). In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 11,834 words.

In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

*/s/ Ignacio J. Lazo*

Ignacio J. Lazo
CADDEN & FULLER LLP
2050 Main Street, Suite 260
Irvine, CA 92614
Tel.: (949) 788-0827
Email: ilazo@caddenfuller.com
Counsel for Consolidated Plaintiff,
InterGlobal Forest LLC
